No. 96-310

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RONALD EDWARD BORCHERT,

Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jennifer Wendt Bordy, Bozeman, Montana; Suzanne C.
Smith, Marshall & Smith, Bozeman, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, John Paulson,
Assistant Attorney General; Mike Salvagni, Gallatin
County Attorney, Marty Lambert, Deputy Gallatin
County Attorney, Bozeman, Montana

Submitted on Briefs: January 9, 1997

Decided: March 6, 1997
Filed:


_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


Appellant Ronald Edward Borchert (Borchert) was convicted of two counts of robbery following a jury trial in the Eighteenth Judicial District Court, Gallatin County. Borchert appeals. We reverse and remand for a new trial.

The following issues are dispositive:

1. Did the District Court abuse its discretion in denying Borchert's motion to continue?

2. Was Borchert denied effective assistance of counsel when his co-defendant confessed on the date set for trial, creating a conflict of interest because his counsel previously represented the co-defendant when he maintained his innocence?

BACKGROUND

On July 16, 1993, within a period of one hour, two robberies were committed at two motels in Bozeman, Montana. Both robberies were committed by the same two men, in much the same manner: as one robber, wearing a blue handkerchief wrapped around his face and brandishing a pellet gun, guarded the entrance to the lobby of the motel, the other robber, wearing a rubber Halloween mask, a red and black flannel shirt, and brandishing a large-caliber revolver, approached the clerk on duty and demanded money. At one of the motels, the Western Heritage Inn, the robber wearing the Halloween mask and flannel shirt left a muddy shoe print on the service counter when he climbed over it to reach the clerk and the money in the motel till.

Bozeman police did not apprehend the robbers on July 16, 1993. However, subsequent investigation led to the arrests of Borchert and Michael Paul Bakeberg (Bakeberg). The investigation generally involved the following events and revealed the following information:

On August 5, 1993, Borchert was arrested in Belgrade, Montana for DUI. The arresting officer noticed a rubber mask on the passenger-side floorboard of Borchert's car. The officer seized the mask and impounded the car. When shown the mask later, the motel clerks identified it (mistakenly, as subsequent events would establish) as the one worn during the robberies. During police

questioning, Borchert denied any involvement in the robberies and claimed that he found the mask in a dumpster. Police later searched Borchert's residence without finding any incriminating evidence.

Soon after the police searched Borchert's residence, Borchert's older brother called Bakeberg to warn him that the police would likely come talk to him. Bakeberg had the mask and flannel shirt worn during the robberies in his possession; he took them to a brushy area near the Bozeman dump and hid them there.

The next day, Bakeberg walked from his home to the Bozeman police station to speak with the detectives investigating the robberies. While interviewing Bakeberg, Detective Mark LaChapelle noticed that Bakeberg was wearing Converse Allstars gym shoes with a tread design similar to the shoe print which had been left on the counter top at the Western Heritage Inn. Detective LaChapelle took the shoes and sent them to the state crime lab in Missoula and later to the FBI crime lab.

On October 30, 1993, two Montana State University students discovered among the rocks surrounding Hyalite reservoir near Bozeman a Smith & Wesson .357 caliber pistol with distinctive sights and grips. The students brought the gun to the sheriff's office in Bozeman. Later, the pistol was identified by the motel clerks as one of the guns used in the robberies. The pistol was also identified by Chris Rager (Rager) as one of three guns stolen from his home some two weeks prior to the motel robberies. One of the persons involved in the burglary of Rager's home was Borchert's younger brother Donny. In addition, in the course of an investigation into an unrelated crime, police learned from Tim Craig, the father of a friend of Borchert's and Bakeberg's, that he, Craig, had received from Borchert and another man two of the guns stolen from Rager's home, the .357 and a .44 magnum pistol. Borchert had initially given the .357 to Craig as collateral for a loan, but later, despite not having repaid the loan, had pleaded with Craig for its return. Craig returned the pistol to Borchert on October 23, 1993, the day after Bozeman police visited with Craig.

Borchert was eventually charged with two counts of robbery on May 17, 1995. Suzanne Smith was appointed to represent Borchert. Bakeberg was charged as a co-defendant in June, 1995. Bakeberg, a juvenile at the time of the offenses, was represented at an October 2, 1995 detention hearing by Ms. Smith, who soon withdrew. Thereafter, Bakeberg was represented by Karl Seel, while Ms. Smith maintained her representation of Borchert. Trial was set for November 13, 1995.

On the morning of the trial, the State moved for a continuance on the grounds that it was unsure whether two of its witnesses, Craig and his son Shawn (both of whom, since the robbery investigation, had moved to Bend, Oregon) would make it to Bozeman.

The Gallatin County Attorney's office had arranged their travel plans and possessed the correct itineraries, but because of a misunderstanding of the Craigs' travel plans believed that they had missed a crucial connecting flight early on the morning of the first day of trial, when they were scheduled to testify. The county attorney asserted that the Craigs were material witnesses and therefore an important part of the State's case. In addition, there was some concern that because of some legal issues unrelated to the instant case, the Craigs would not show up in Bozeman at all. Over Borchert's objection, the court granted the State's motion for continuance.

The State appeared before the court at 1:30 p.m., later the same day, and informed the court that the Craigs had indeed arrived in Bozeman. The court recalled the jury to begin trial the next day.

Meanwhile, also on November 13, 1995, in the morning, Bakeberg's attorney approached the Gallatin County Attorney about the possibility of a plea agreement in exchange for Bakeberg's testimony and cooperation. An agreement was reached around 4:00 p.m., and shortly thereafter Bakeberg led authorities to the brushy area near the Bozeman dump where he had hidden the mask and flannel shirt worn in the robberies. These items were recovered sometime between 4:00 p.m. and 6:00 p.m.

The State did not inform Borchert's attorney that Bakeberg had requested a plea agreement; that an agreement was in fact reached, pursuant to which Bakeberg would testify against Borchert; and, that Bakeberg had produced for authorities the mask and flannel shirt worn during the robberies. However, Borchert's attorney did eventually learn of this turn of events, by sheer coincidence: Borchert's attorney dined the night of November 13, 1995, at the same restaurant as Bakeberg's attorney.

The next morning, Borchert moved to continue the trial. The court denied the motion. After the trial, the jury found Borchert guilty of two counts of robbery. Borchert appeals.

ISSUE 1

Did the District Court abuse its discretion in denying Borchert's motion to continue?

A ruling on a motion to continue is subject to the district court's discretion. State v. Sotelo (1984), 209 Mont. 86, 90, 679 P.2d 779, 782; 46-13-202(3), MCA. We review discretionary district court rulings to determine whether the court abused its discretion. State v. Sullivan (1994), 266 Mont. 313, 324, 880 P.2d 829, 836.

Section 46-13-202, MCA, governs motions for a continuance. The statute states:

Motion for continuance. (1) The defendant or the prosecutor may move for a continuance. If the motion is made more than 30 days after arraignment or at any time

after trial has begun, the court may require that it be supported by affidavit.

(2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.

(3) All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial.

In addressing Borchert's motion to continue, the court was to consider "the interests of justice" and "the diligence shown by the movant." Borchert argues that he clearly met these two elements, and that the court therefore abused its discretion in denying his motion to continue. We agree.

Borchert specifies several bases for his contention that the interests of justice required that his motion to continue be granted. First, Borchert explains that his defense had centered on his and Bakeberg's maintenance of innocence. This defense, Borchert argues, was reasonably relied upon. Up until the point at which the plea agreement was reached, Bakeberg maintained that neither he nor Borchert was involved in the robberies. There was no one, other than Bakeberg, who could positively place Borchert at the scenes of the robberies. Moreover, up until the point at which the plea agreement was reached, the State had the wrong mask in its possession. Further, Borchert contends that much of the evidence prior to November 13, 1995, pointed to Bakeberg and possibly Tim Craig's son Shawn as the likely culprits, but not Borchert. To this end, Borchert explains that the shoes which matched the shoe print on the counter in the Western Heritage Inn were taken from Bakeberg, not Borchert, and that Shawn Craig, whose testimony was generally inconsistent, provided the only explanation for where the .357 was ultimately found; Shawn explained that he accompanied Borchert on the night of October 23, 1993, to Hyalite reservoir, where he saw Borchert throw the pistol toward the water. Borchert argues, and we agree, that Bakeberg's last minute confession eviscerated Borchert's planned defense strategy: Bakeberg placed Borchert at the scenes of the robberies, described Borchert as wearing the mask and flannel shirt and brandishing the .357 during the robberies, divulged to the police the location of the mask and the flannel shirt, and explained that on the night of the robberies he allowed Borchert to wear his Converse Allstars gym shoes.

Furthermore, Borchert contends that there was not enough time, between the point at which his attorney fortuitously learned of Bakeberg's plea agreement and the beginning of trial, in which to

construct a new defense strategy to replace the one which took "60 hours" to construct and only a few hours to destroy. The difficulty in creating a reasonable defense in just a few hours, under these circumstances, on the eve of trial, is apparent. In any event, Borchert's contention here is supported by this Court's decision in Sotelo, where we concluded that the district court abused its discretion in denying a motion to continue filed by an attorney who had been appointed counsel one month before trial. Sotelo, 679 P.2d at 782. We determined that the attorney's motion should properly have been granted, because the attorney could not reasonably have constructed a sufficient defense in the time available to him. Sotelo, 679 P.2d at 781-82. Just as we considered the particular circumstances in reaching our decision in Sotelo, we conclude here that Borchert's attorney could not possibly have constructed, or more precisely, reconstructed, a sufficient defense, and, in that respect, provided effective assistance of counsel, under the circumstances of this case. The relationship between the importance of effective assistance of counsel, the court's affirmative duty to foster that degree of assistance, and the propriety of granting a defendant's motion to continue, is clearly stated in this Court's previous decisions. See, e.g., State v. Lundblade (1984), 213 Mont. 420, 424, 691 P.2d 831, 833 (court abused discretion in denying continuance, where appointed counsel had no time in which to prepare a defense, resulting in violation of defendant's right to a fair trial and effective assistance of counsel); State v. Fife (1980), 187 Mont. 65, 70-71, 608 P.2d 1069, 1072-73 ("close question" regarding motion to continue should be resolved in favor of defendant in order to ensure fair trial); State v. Blakeslee (1957), 131 Mont. 47, 54-55, 306 P.2d 1103, 1107 (court has an affirmative duty "to make the appointment of counsel effective, i.e., to give court-appointed counsel a reasonable time for the preparation of his case after he has been appointed").

Finally, Borchert points out that the State actually concurred in the motion to continue. During argument before the court regarding the motion to continue, the then-Deputy County Attorney stated:

If the grounds [for the motion] are that [Borchert's] strategy now has changed, based on what Mr. Bakeberg did yesterday and the physical evidence that he led us to about 6:00 p.m. last night, I don't object to that.

The State's concurrence both in the motion and Borchert's grounds therefor lends considerable support to Borchert's argument that his motion to continue should, in the interests of justice, have been granted, while at the same time relieves us of considering the issue of potential inconvenience to the State were the motion granted. We conclude that the interests of justice required that

Borchert's motion to continue be granted.

Borchert also provides support for his contention that his attorney exercised due diligence. Borchert's attorney informed the court that she spent 60 hours preparing for trial. She also explained that she represented Bakeberg at his detention hearing (she later withdrew) and at that time Bakeberg indicated he was not a participant in the robberies; that she interviewed Bakeberg some six weeks prior to trial, at which time he continued to deny any involvement; and, that she confirmed with Bakeberg's attorney one more time before trial that Bakeberg's testimony would comport with his consistent claim of innocence. Borchert's attorney did all that she could to "cover all the bases" in preparation for trial; the State's claim to the contrary is without merit. Borchert's attorney could not reasonably have expected nor been prepared for what she inadvertently discovered while out to dinner the night before trial. In this regard we note that the State has an obligation to promptly disclose to defense counsel the existence of additional information or material, 46-15-327, MCA, but there is no indication in the record that the State made any effort to notify Borchert's attorney of Bakeberg's change of heart. In State v. Timblin (1992), 254 Mont. 48, 834 P.2d 927, where the State failed to disclose to the defense changes in a rape victim's version of the crime, changes of which the defense was unaware until the day of trial, we reversed the district court's denial of Timblin's motion to continue, stating that "[i]n this instance, due to the lack of notice of changed testimony, a continuance would have been proper." Timblin, 834 P.2d at 928.

The circumstances of this case establish that Borchert's request for a continuance was reasonable, that a continuance was in the interests of justice, and that Borchert's attorney exercised due diligence. As we stated in Sotelo:

If counsel is diligent yet has not been afforded sufficient time to prepare a defense, the accused's specific rights have been violated and his general right to a fair trial has been denied.

....

[W]hen a continuance is requested, and that request is reasonable given all the relevant factors including defendant's right to a fair trial and effective assistance of counsel, it constitutes abuse of discretion for the court to refuse to grant the continuance.

Sotelo, 679 P.2d at 782. We hold that the District Court abused its discretion in denying Borchert's motion to continue.

ISSUE 2

Was Borchert denied effective assistance of counsel when his

co-defendant confessed on the date set for trial, creating a conflict of interest because his counsel previously represented the co-defendant when he maintained his innocence?

Borchert argues that he was denied effective assistance of counsel because of a conflict of interest created by Bakeberg's last minute confession. Borchert explains that because his counsel previously represented Bakeberg at Bakeberg's detention hearing, creating an attorney-client relationship with him, counsel was later hindered in her cross-examination of Bakeberg at trial. The State argues, however, that Borchert cannot meet the test for ineffective assistance of counsel due to conflict of interest that this Court adopted in State v. Christenson (1991), 250 Mont. 351, 355, 820 P.2d 1303, 1306.

We will not engage in a full analysis of the merits of these arguments; our decision to reverse and remand for a new trial has already been made, based on the District Court's error in denying Borchert's motion to continue. Therefore, our resolution of this issue is embodied in the following directive: at Borchert's retrial, if Borchert waives, on the record, the alleged conflict of interest, his present counsel may continue to represent him; if, however, Borchert refuses to waive the conflict, and he and his present counsel are unwilling to continue the representation, the court must appoint new counsel for Borchert.

CONCLUSION

The District Court abused its discretion in denying Borchert's motion to continue, and on that ground this matter is reversed and remanded for a new trial. We note Borchert's claim of ineffective assistance of counsel due to conflict of interest, and therefore direct the District Court on remand as follows: if Borchert waives, on the record, the alleged conflict of interest, his present counsel may continue to represent him; if, however, Borchert refuses to waive the conflict, and he and his present counsel are unwilling to continue the representation, the court must appoint new counsel for Borchert.

Reversed and remanded for a new trial.


/S/ WILLIAM E. HUNT, SR.



We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

96-310