No. 97-245

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 210

STATE OF MONTANA,

Plaintiff and Respondent,

v.

KEVIN SCHMALZ,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone County,

Honorable G. Todd Baugh, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Allen Beck, Attorney at Law, Billings, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Micheal S. Wellenstein,

Assistant Attorney General, Helena, Montana

Dennis Paxinos, County Attorney, Melanie Logan, Deputy County

Attorney, Billings, Montana

Submitted on Briefs: June 11, 1998

Decided: August 25, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1 A jury in the Thirteenth Judicial District Court, Yellowstone County, convicted Kevin Schmalz of the attempted deliberate homicide of his mother. He appeals. We affirm.**

**¶2 The issues are whether the case should be reversed for abuse of prosecutorial discretion and whether the District Court erred in refusing the defense's proposed instruction on felony assault.**

**¶3 The State of Montana filed two counts of attempted deliberate homicide against seventeen-year old Kevin Schmalz as a result of a family dispute which occurred on February 3, 1996. At approximately 11:30 that evening, Schmalz and his mother had an argument about items which she had thrown away when she cleaned his room earlier that day. Schmalz's father went downstairs to the family room where they**

were arguing and told them both to quiet down and go to bed. He grabbed Schmalz by the back of the neck and pushed him toward his bedroom. Schmalz ran into his room, pulled out his .22 caliber bolt-action rifle, and came back out shooting from the hip.

¶4 Schmalz's first shot grazed his mother's cheek. He came further into the family room and shot her in the chest, after which she stood behind a reclining chair yelling at him to give her the gun. Schmalz's father rushed at Schmalz, and Schmalz shot him in the chest. Schmalz and his parents then wrestled for control of the gun, during which the father tried to punch Schmalz but accidentally hit the mother instead. Schmalz became upset, said, "You hit mom," dropped the rifle, then ran out of the house.

¶5 Schmalz's parents called 911. Schmalz was arrested when he returned to the home while police and paramedics were there assisting his parents. Schmalz's mother was treated at the hospital for a superficial wound on her right cheek and two broken ribs and a bruised lung from the shot to her chest. Schmalz's father was hospitalized as a result of the gunshot wound to his chest.

¶6 Schmalz was charged with two counts of attempted deliberate homicide. Just before trial, he pled guilty to aggravated assault against his father, and the charge of attempted deliberate homicide of the father was not pursued at trial. After a three-day trial, the jury found Schmalz guilty of the attempted deliberate homicide of his mother.

Issue 1

¶7 Should the case be reversed for abuse of prosecutorial discretion?

¶8 Under this issue, Schmalz raises several claims. He alleges that the prosecutor improperly refused to charge the case as aggravated assault upon his mother; that the prosecution failed to introduce to the jury the full testimony of the parent/victims; and that in closing arguments, the prosecutor argued a theory to the jury which was not supported by the victims' testimony.

¶9 We first consider the matter of failure to charge aggravated assault rather than attempted deliberate homicide. Where the facts of a case support a possible charge of

more than one crime, the crime to be charged is a matter of prosecutorial discretion. *State v. Booke* (1978), 178 Mont. 225, 230, 583 P.2d 405, 408. Schmalz admits that the facts of this case support a possible charge of attempted deliberate homicide of his mother. He has not established abuse of the prosecutor's discretion as to which crime to charge, which he admits is broad.

¶10 Schmalz does not elaborate upon his claim that the prosecution failed to present the full testimony of the parent/victims, but it appears he is referring to his parents' wishes that this case not be brought to trial. Schmalz has shown no reason why defense counsel could not have elicited such testimony on cross-examination of the parents, for what it was worth. At any rate, Schmalz argues that this disregard by the prosecution of the victims' wishes should be considered in conjunction with his claims concerning the prosecution's closing argument.

¶11 The district court should be given the first opportunity to correct any trial errors. *State v. Rogers* (1993), 257 Mont. 413, 418-19, 849 P.2d 1028, 1031-32. In this case, as the State points out, the defense failed to make any objection to the prosecutor's comments during closing argument.

¶12 Section 46-20-104, MCA, provides in pertinent part:

> (2) Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgment. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in 46-20-701(2).

Under the above statute, this Court is precluded from considering an alleged error unless a timely objection was made or unless the following statutory criteria are met:

> (2) Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. A claim alleging an error affecting jurisdictional or constitutional rights may not be noticed on appeal if the alleged error was not objected to as provided in 46-20-104, unless the convicted person establishes that the error was prejudicial as to the convicted person's guilt or punishment and that:
>
> (a) the right asserted in the claim did not exist at the time of the trial and has

been determined to be retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the convicted person or the convicted person's attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the convicted person or the convicted person's attorney and could not have been ascertained by the exercise of reasonable diligence.

Section 46-20-701(2), MCA.

**¶13 Because the defense did not object to the prosecutor's closing arguments, this claim has not been properly preserved for appeal. Nor has Schmalz demonstrated that he can satisfy any of the requirements of § 46-20-701(2), MCA. Therefore, we conclude that he has waived the right to have this Court consider his claims regarding the prosecutor's closing argument.**

**¶14 We hold that Schmalz has failed to establish any reason why this case should be reversed for prosecutorial misconduct.**

Issue 2

**¶15 Did the District Court err by refusing the instruction requested by the defense on felony assault?**

**¶16 At the close of the evidence, the District Court rejected Schmalz's request for a jury instruction on a lesser included offense of felony assault, and instead instructed the jury on the lesser included offense of aggravated assault. The difference between aggravated assault and felony assault, for purposes of this case, is whether Schmalz's mother suffered serious bodily injury (aggravated assault), or bodily injury by a weapon (felony assault). Section 45-5-202, MCA. Both offenses require a mental state of purposely or knowingly.**

**¶17 Schmalz points out that one doctor testified that his mother was not at substantial risk of death. He argues that she therefore did not suffer serious bodily injury.**

¶18 That the victim was at substantial risk of death is one definition of serious bodily injury under § 45-2-101(64), MCA. Another definition of serious bodily injury under that statute is bodily injury which "at the time of injury, can reasonably be expected to result in . . . protracted loss or impairment of the function or process of any bodily member or organ." Section 45-2-101(64)(a)(iii), MCA.

¶19 In deciding to instruct on aggravated assault, the District Court reasoned that Schmalz's mother suffered serious bodily injury from the second bullet, which grazed her lung, inches from her heart. The paramedic who initially treated Schmalz's mother testified that it sounded like her lung had been punctured. The court deemed this an injury which was or could be expected to cause protracted loss of the function or process of a bodily organ. There was no contrary testimony, although, fortunately, the mother's injuries proved not to be as serious as they were initially believed to be.

¶20 As further support for his argument that the jury should have been instructed on felony assault, Schmalz points out that his mother testified that the first bullet hit her before he was out of his bedroom and that she believed he did not shoot at her the second time she was hit, but that she instead stepped into the path of the bullet. Schmalz asserts that this raises the question of whether he possessed the necessary state of mind to be convicted of attempted deliberate homicide--the purpose to cause the death of another human being and action toward purposely or knowingly causing the death of another human being. Sections 45-4-103 and 45-5-102, MCA; *State v. Sellner* (Mont. 1997), 951 P.2d 996, 998, 54 St.Rep. 1464, 1465.

¶21 When a criminal defendant is charged with attempted deliberate homicide or deliberate homicide, a lesser included offense instruction on assault must be given if there is a "basis from which a jury could rationally conclude that the defendant is guilty of the lesser, but not the greater offense." *State v. Castle* (1997), 285 Mont. 363, 369, 948 P.2d 688, 691. In *Castle*, although the defendant had punched the victim in the jaw, there was evidence that injuries inflicted by other persons, including stab wounds and severe blunt force injuries to the head, had caused the victim's death.

¶22 In this case, unlike in *Castle*, there was no evidence that any person other than Schmalz caused the victim's injuries. Also, here, unlike in *Castle*, there was no danger that the jury possibly convicted Schmalz of attempted deliberate homicide rather than let his admitted crime go unpunished, because the jury was instructed on

**the lesser included offense of aggravated assault.**

**¶23 Schmalz cites the common-law rule that the court must instruct upon every issue or theory having support in the evidence, citing,** *inter alia*, *State v. Gopher* **(1981), 194 Mont. 227, 633 P.2d 1195. However, we have held that an instruction on a lesser included offense of assault has no support in the evidence and is not necessary when the defense's evidence, if believed, would require an acquittal. See** *Sellner* **and** *State v. Howell*, **1998 MT 20, ¶ 34, 954 P.2d 1102, ¶ 34, 55 St.Rep. 72, ¶ 34. The testimony of Schmalz's mother, if believed, would support an acquittal, not a conviction of felony assault. According to her testimony, Schmalz had no intent to shoot her at all. Like in** *Sellner* **and** *Howell*, **if the jury believed the testimony upon which the defense relies, an instruction on the lesser included offense would have no support in the evidence because the necessary intent would be lacking.**

**¶24 We hold that the District Court did not err in refusing Schmalz's request for an instruction on felony assault.**

**¶25 Affirmed.**

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER