No. 97-332

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 265

STATE OF MONTANA,

Plaintiff and Respondent,

v.

VINCENT MARTINEZ,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William A. D'Alton, Deputy Public Defender, Billings, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Pam Collins, Assistant Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs: July 2, 1998

Decided: November 5, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Vincent Martinez (Martinez) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on a jury verdict finding him guilty of felony assault and criminal endangerment. We affirm.**

**¶2. We address the following issues:**

**¶3. 1. Did the District Court err in refusing Martinez's proposed jury instruction on misdemeanor assault as a lesser included offense of felony assault?**

**¶4. 2. Did the District Court err in refusing Martinez's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment?**

**¶5. 3. Did the District Court abuse its discretion when it denied Martinez's motion for a continuance on the day of trial?**

BACKGROUND

**¶6. On the evening of December 30, 1995, Jason Gillespie (Gillespie) and three of his**

friends were out driving around in Billings, Montana. Gillespie eventually decided to go home and had his friends return him to the house where he had left his car. When they pulled up to the house, they observed Martinez and Chad Peak (Peak) fighting in the front yard. While his friends went into the house, Gillespie stood next to his parked car and watched the fight. Peak eventually disengaged from the fight, left the yard and started running down the street. Gillespie then observed Martinez pull a .22 caliber handgun out from underneath his clothing, aim the gun toward Peak and fire a shot.

¶7. After firing at Peak, Martinez turned, pointed the gun at Gillespie and told him to get into Martinez's nearby truck. Gillespie did so and Martinez drove off with Gillespie toward Laurel, Montana, at a high rate of speed. Upon reaching Laurel, Martinez stopped in the Pelican Truck Stop parking lot for a short time, then drove to a trailer park where Dan Sisk (Sisk) lived. Martinez got out of the truck, told Gillespie to stay where he was and went into Sisk's garage. While Martinez was in the garage talking to Sisk, Gillespie climbed out the truck's passenger-side window, ran to a neighboring trailer and called 911. Officers from the Laurel police department and the Yellowstone County sheriff's department arrived shortly thereafter and, after a brief high-speed chase, arrested Martinez in the Pelican Truck Stop parking lot.

¶8. Martinez was charged by amended information in the District Court with the offenses of kidnaping, a felony, in violation of § 45-5-302, MCA; felony assault, in violation of § 45-5-202, MCA; criminal possession of dangerous drugs, a felony, in violation of § 45-9-102, MCA; and criminal endangerment, a felony, in violation of § 45-5-207, MCA. The criminal possession of dangerous drugs charge subsequently was dismissed and a jury trial was held on the remaining three counts. The jury found Martinez not guilty of kidnaping and guilty of both felony assault and criminal endangerment. The District Court sentenced Martinez and entered judgment and Martinez appeals.

## DISCUSSION

¶9. 1. Did the District Court err in refusing Martinez's proposed jury instruction on misdemeanor assault as a lesser included offense of felony assault?

¶10. A criminal defendant is entitled to an instruction on a lesser included offense if

the jury, in light of the evidence presented, could be warranted in finding the defendant guilty of the lesser, rather than the greater, offense. Section 46-16-607(2), MCA; State v. Fisch (1994), 266 Mont. 520, 522, 881 P.2d 626, 628. Two criteria must be met before a defendant is entitled to a lesser included offense instruction. First, the offense must actually constitute a lesser included offense of the offense charged, and, second, there must be sufficient evidence to support the included offense instruction. Fisch, 266 Mont. at 522, 881 P.2d at 628. Furthermore, although a defendant is entitled to jury instructions on every issue or theory having support in the evidence, a lesser included offense instruction is not supported by the evidence where the defendant's evidence or theory, if believed, would require an acquittal. State v. Schmalz, 1998 MT 210, ¶23, ___ P.2d ___, ¶23, 55 St. Rep. 889, ¶23. In this case, because we conclude that the evidence did not support Martinez's proposed instruction, we need not address whether misdemeanor assault is a lesser included offense of felony assault.

¶11. Martinez was charged with felony assault under § 45-5-202(2)(b), MCA, for purposely or knowingly causing reasonable apprehension of serious bodily injury by use of a weapon when he pointed the handgun at Gillespie. At trial, Gillespie was the prosecution's only witness on the felony assault charge. Gillespie testified that, when Peak began running down the street, Martinez turned to him, jabbed him in the chest with the gun, called him a bastard for not having helped Martinez in the fight with Peak and told him that Martinez would "get him next." According to Gillespie, Martinez then fired the gun at Peak, turned back to Gillespie, pointed the gun at his head or chest and told him to get into Martinez's truck. Gillespie further testified that, when Martinez pointed the gun at him, he was in fear for his life because he thought Martinez would shoot him. Martinez did not testify on his own behalf to controvert Gillespie's version of what happened. Consequently, Gillespie's testimony was the only evidence supporting the felony assault charge.

¶12. Martinez's theory at trial was that Gillespie was not a credible witness. On cross-examination of Gillespie, Martinez's counsel established a number of inconsistencies between Gillespie's trial testimony and his previous statements to law enforcement officers regarding the events of December 30, 1995. For example, Gillespie gave differing descriptions of the manner in which Martinez pulled out the gun and from what part of his clothing Martinez withdrew the gun. Further, Gillespie was unclear as to whether Martinez pointed the gun at his head, his chest or some other part of his body. Defense counsel also elicited admissions from Gillespie that he had lied to

law enforcement in various aspects of his prior statements, previously had been addicted to methamphetamine and had smoked marijuana on the night in question.

¶13. During settlement of jury instructions, Martinez's counsel offered a proposed jury instruction that misdemeanor assault as defined in § 45-5-201(1)(d), MCA, is a lesser included offense of the felony assault with which Martinez was charged. Section 45-5-201(1)(d), MCA, provides that a person commits the offense of misdemeanor assault if he or she "purposely or knowingly causes reasonable apprehension of bodily injury in another." The District Court refused to give the proposed misdemeanor assault instruction and Martinez contends that the court erred.

¶14. Martinez argues that there was sufficient evidence before the jury to warrant an instruction on misdemeanor assault. His argument is premised on his contention that Gillespie was not a credible witness and, therefore, that the jury reasonably could have discounted Gillespie's testimony as to the manner in which Martinez used the gun and found that the gun was not a factor in the assault. Accordingly, urges Martinez, the jury could have determined that the "with a weapon" element of felony assault under § 45-5-202(2)(b), MCA, had not been established and that Martinez committed only misdemeanor assault by putting Gillespie in reasonable apprehension of bodily injury.

¶15. As discussed above, Gillespie provided the only testimony at trial regarding the specific events underlying the felony assault charge. The only other eyewitness to the events was Martinez, and he did not testify. As a result, if the jury had discounted Gillespie's testimony--as Martinez asserts it should have--there would have been no evidence at all in support of an assault charge. The absence of evidence establishing the elements of a criminal charge supports a verdict of acquittal. See State v. Mergenthaler (1994), 263 Mont. 198, 203, 868 P.2d 560, 562-63. Moreover, a lesser included offense instruction is not supported by the evidence where the defendant's evidence or theory, if believed, would require an acquittal. Schmalz, ¶23. As a result, we conclude that, under Martinez's theory, the evidence before the jury did not support an instruction on misdemeanor assault. Therefore, we hold that the District Court did not err in refusing Martinez's proposed jury instruction on misdemeanor assault.

¶16. 2. Did the District Court err in refusing Martinez's proposed jury instruction on

negligent endangerment as a lesser included offense of criminal endangerment?

¶17. Martinez also was charged with criminal endangerment, a felony, in violation of § 45-5-207, MCA, for knowingly engaging in conduct which created a substantial risk of death or serious bodily injury to another by firing a shot at Peak. Gillespie's testimony was the prosecution's primary evidence in support of this charge and he testified that he observed Martinez pull the handgun out from under his clothing, aim the gun at Peak and fire a shot at Peak's back. Peak testified that, although he saw Martinez reaching for something and heard the report of a gunshot, he did not actually see Martinez with a gun in his hand. Moreover, because he was running away from Martinez, Peak did not observe Martinez shoot the gun. Thus, Peak could not testify whether Martinez aimed the gun at him or anywhere in his general direction. As stated above, Martinez did not testify on his own behalf to controvert Gillespie's testimony.

¶18. Martinez offered a proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. Negligent endangerment is defined as negligently engaging in conduct that creates a substantial risk of death or serious bodily injury to another. Section 45-5-208, MCA. The District Court refused the instruction and Martinez asserts error.

¶19. Martinez advances the same argument here as he advanced regarding his proposed instruction on misdemeanor assault. He contends that, because Gillespie was not a credible witness, the jury could have discounted Gillespie's testimony and, as a result, reasonably could have found that Martinez acted negligently, rather than knowingly, in shooting the gun. Under this scenario, Martinez posits that the jury could have found him guilty of the lesser charge of negligent endangerment. Here again, because we conclude that the evidence did not support Martinez's proposed jury instruction, we need not address the threshold criterion of whether negligent endangerment is a lesser included offense of criminal endangerment.

¶20. Gillespie's testimony was the only evidence admitted at trial that Martinez fired the gun at Peak. If the jury discounted Gillespie's testimony as incredible, there would have been no evidence at all regarding Martinez's actions and the absence of evidence would have required a verdict of acquittal. See Schmalz, ¶23. As a result, we conclude that, under Martinez's theory here, the evidence before the jury did not support an instruction on negligent endangerment. We hold, therefore, that the

District Court did not err in refusing Martinez's proposed jury instruction on negligent endangerment.

¶21. 3. Did the District Court abuse its discretion when it denied Martinez's motion for a continuance on the day of trial?

¶22. Section 46-13-202, MCA, provides, in part, as follows:

(2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.

(3) All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial.

Thus, it is within a district court's discretion to determine, in light of the interests of justice and the due diligence of the moving party, whether to grant a motion for a continuance. Consequently, we review a district court's denial of a motion for continuance in a criminal case to determine whether the court abused its discretion. State v. Big Hair, 1998 MT 61, ¶9, 955 P.2d 1352, ¶9, 55 St. Rep. 257, ¶9 (citation omitted).

¶23. The trial in this case initially was set for April 29, 1996. After several continuances, trial was rescheduled for November 18, 1996. On that date, the prosecution requested another continuance as a result of its inability to locate its primary witness, Gillespie, and the District Court set trial for December 2, 1996. During the interim, the prosecution located Gillespie in Wyoming and Martinez's counsel requested an opportunity to interview Gillespie prior to trial. The interview did not occur until the day before the trial date and, during the interview, defense counsel learned that Gillespie had been addicted to methamphetamine before and at the time of the events on which the charges against Martinez were based. Further, defense counsel learned of a number of inconsistencies in Gillespie's description of the events as compared to his previous statements.

¶24. On the morning of trial, Martinez requested the District Court to continue the trial date to allow him to interview witnesses regarding information that came to light during the Gillespie interview and to locate an expert witness to testify as to the

effects of long-term use of methamphetamine on the ability of a witness to accurately recollect events. The court denied the request and proceeded with the trial. Martinez asserts that the District Court abused its discretion in denying his request for a continuance because the revelation of Gillespie's inconsistent version of the events at issue and admission of drug addiction, on the eve of trial, hampered his defense.

¶25. Martinez's first contention is that the prosecution should have made Gillespie available for an interview prior to the eve of trial and that its failure to do so prevented him from adequately preparing for trial and cross-examination. The record reflects, however, that an investigator for the defense interviewed Gillespie in March of 1996. Further, although Gillespie remained in the Billings area until September of 1996 and was available for further questioning during that period, Martinez's counsel did not attempt to interview Gillespie again until after the November 18, 1996 trial date was vacated due to the prosecution's inability to locate Gillespie. In light of the fact that Martinez's counsel could have interviewed Gillespie at any time between March and September of 1996, but did not do so, we conclude that the prosecution's failure to make Gillespie available for an interview until the day before trial, after locating him in Wyoming sometime after November 18, did not prevent Martinez from adequately preparing for trial.

¶26. Martinez also argues that the District Court should have granted a continuance to further investigate Gillespie's last-minute revelation that he had been addicted to methamphetamine at the time of the events in question and to consult with an expert regarding the effect of long-term drug use on the ability of a witness to recollect events. We disagree.

¶27. When the investigator for the defense interviewed Gillespie in March of 1996, Gillespie admitted to smoking marijuana on a recreational basis. The investigator apparently did not inquire as to whether Gillespie used other types of drugs and Gillespie did not offer the information. Martinez's counsel requested--and received--records of Gillespie's criminal history, however, including those pertaining to drug-related incidents. Furthermore, the record indicates that on June 24, 1996, Martinez's counsel filed notice of intent to present expert testimony at trial regarding the effects of drug use--specifically, hallucinogenic drugs--on a person's "ability to perceive accurately events and circumstances around him and, further, the effects of long-term use of hallucinogenic substances on a witness's mental state . . . ." Thus, it is clear that Martinez intended long before trial to make Gillespie's drug use an issue

at trial.

¶28. Additionally, although the District Court denied Martinez's motion to continue, it granted his request to call a previously undisclosed expert witness to testify regarding the effects of methamphetamine use on the ability of a witness to perceive and recall events. Although Martinez eventually did not call this witness for fear that cross-examination of the expert would be detrimental to his defense, he was not prevented from presenting such evidence by Gillespie's last-minute revelation of methamphetamine addiction.

¶29. Finally, Martinez relies on State v. Timblin (1992), 254 Mont. 48, 834 P.2d 927 and State v. Borchert (1997), 281 Mont. 320, 934 P.2d 170, for the proposition that the interests of justice required the District Court to grant his motion for continuance based on Gillespie's contradictory statements discovered on the eve of trial. In Timblin, the victim's testimony at trial differed in a number of respects from a previous statement she had given. The prosecution and the investigating officer were aware that the victim's version of the events had changed prior to trial, but did not inform the defense. Timblin, 254 Mont. at 49-50, 834 P.2d at 928. Upon hearing the victim's trial testimony, the defense attempted to subpoena two witnesses who could testify to the events at issue and impeach the victim's credibility, but was unable to serve the subpoenas because the witnesses could not be located. Timblin, 254 Mont. at 50, 834 P.2d at 928. The defense then moved for a continuance until such time as the witnesses could be subpoenaed, but the district court denied the motion. Timblin, 254 Mont. at 50, 834 P.2d at 928. We concluded that the defense had shown due diligence in attempting to subpoena the witnesses as soon as it heard the victim's unexpected testimony and that the testimony of the witnesses was highly important to the defendant's ability to present a defense. On that basis, we held that the district court abused its discretion in denying the motion to continue. Timblin, 254 Mont. at 51, 834 P.2d at 929.

¶30. In the present case, there is no indication that the prosecution was aware of Gillespie's methamphetamine addiction at any earlier point in the proceedings or that it knew, and failed to inform Martinez, that Gillespie's version of the events had changed in any way. Nor was Martinez unable to present evidence at trial impeaching Gillespie's credibility. To the contrary, Martinez's counsel cross-examined Gillespie at length on his inconsistent statements regarding what occurred on December 30, 1995, and even elicited admissions that Gillespie had lied to law

enforcement officers about the events of that evening. Furthermore, Martinez had the opportunity to subpoena and present witnesses--namely, his expert witness on drug use--in support of his contention that Gillespie lacked credibility; Martinez simply chose not to present such testimony. Thus, <u>Timblin</u> is distinguishable and of no assistance to Martinez here.

¶31. In <u>Borchert</u>, the second case on which Martinez relies, the defendant discovered on the eve of trial that his co-defendant had entered into a plea agreement with the prosecution in which the co-defendant agreed to lead law enforcement to relevant evidence and to testify against the defendant. The prosecution did not inform the defendant of the plea agreement and defense counsel learned of it only by accident. <u>Borchert</u>, 281 Mont. at 323-24, 934 P.2d at 172-73. The defendant moved for a continuance in order to construct a new trial strategy and the district court denied the motion. <u>Borchert</u>, 281 Mont. at 324, 934 P.2d at 173. On appeal, we held that the district court had abused its discretion in denying the motion for continuance. <u>Borchert</u>, 281 Mont. at 327, 934 P.2d at 175. The defendant's entire strategy leading into trial had been that both he and his co-defendant would deny involvement in the offense charged. His co-defendant's last minute plea agreement effectively eviscerated the

defendant's trial strategy and the interests of justice required granting him a continuance to develop a new strategy. <u>Borchert</u>, 281 Mont. at 325, 934 P.2d at 173-74.

¶32. The circumstances of the present case bear no similarity to those in <u>Borchert</u>. Here, Gillespie's differing versions of the events did not completely eviscerate Martinez's trial strategy of discrediting Gillespie. Rather, Martinez's counsel remained able to attack--and, in fact, effectively attacked--Gillespie's credibility by impeaching him with his inconsistent statements and cross-examining him regarding his drug use. <u>Borchert</u> does not support Martinez's argument that the interests of justice required the District Court to grant his motion to continue the trial in this case.

¶33. We hold that the District Court did not abuse its discretion when it denied Martinez's motion for a continuance on the day of trial.

¶34. Affirmed.

/S/ KARLA M. GRAY

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER