No. 02-450

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 158

STATE OF MONTANA,

        Plaintiff and Respondent,

    v.

JAMES EARL,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                      In and for the County of Stillwater, Cause No. DC 00-37,
                      The Honorable Blair Jones, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Jay F. Lansing, Moses Law Firm, Billings, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Tammy Plubell,
                Assistant Attorney General, Helena, Montana

                Robert Eddleman, Stillwater County Attorney, Columbus, Montana


                               Submitted on Briefs:  January 30, 2003

                                      Decided:  June 3, 2003

Filed:

_____
                                Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 The Appellant, James Earl, appeals from the judgment entered by the Twenty-Second Judicial District Court, Stillwater County, following his conviction on two counts of sexual assault. We affirm.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court abuse its discretion when it denied Earl's motion to continue filed three days prior to the jury trial?

¶4 2. Did the District Court properly instruct the jury?

¶5 3. Did the State present sufficient evidence for the jury to convict Earl of sexual assault against T.W. and A.W.?

¶6 4. Are Earl's claims of ineffective assistance of counsel record-based and, therefore, subject to review on direct appeal?

## BACKGROUND

¶7 On July 31, 2000, the State filed an Information charging Earl with two counts of sexual assault, both felonies, in violation of § 45-5-502, MCA. Count one alleged that Earl subjected T.W., a six year old girl, to sexual contact without consent during the month of November or December 1998. Count two alleged that Earl subjected A.W., a twelve year old girl, to sexual contact without consent some time between August 1, 1997, and March 31, 1998. Earl pled not guilty to both counts and the District Court set a jury trial for December 20, 2000.

¶8     Prior to trial, Earl moved the court to continue the matter and waived his right to a speedy trial. The District Court granted Earl's motion and set a new trial date for April 24, 2001. On April 17, 2001, Earl again moved the District Court to continue the matter. The District Court granted Earl's second motion to continue and reset the trial for May 14, 2001. On May 11, 2001, Earl filed a third motion to continue. The District Court granted Earl's motion and later rescheduled the trial for January 28, 2002.

¶9     On January 25, 2002, Earl filed a Motion to Dismiss or Continue. Earl argued that the State violated the omnibus hearing order in that it "has not produced the Statements of ANY witnesses let alone their witnesses in chief." On the morning of trial the District Court denied Earl's motion and the case proceeded to trial. At the close of the State's case-in-chief, Earl moved the court for a directed verdict. The District Court denied Earl's motion. On January 29, 2002, the jury found Earl guilty of both counts of sexual assault. Following a sentencing hearing, the District Court sentenced Earl to twenty years in the Montana State Prison on count one and ten years in the Montana State Prison on count two. The court ordered the sentences to run consecutively. On June 14, 2002, Earl filed a Notice of Appeal from the court's judgment.

DISCUSSION

ISSUE ONE

¶10    Did the District Court abuse its discretion when it denied Earl's motion to continue filed three days prior to the jury trial?

3

¶11     In March 1999, Undersheriff Dan Ames contacted and interviewed several people with regard to the alleged sexual assaults on T.W. and A.W.  During the course of his investigation, Ames elicited statements from various witnesses.  On January 25, 2002, three days prior to trial, Earl learned of the existence of the witness statements and discovered that he did not have copies of the statements.  Therefore, Earl moved the court to continue the trial to give him additional time to investigate the content of the statements.

¶12     In his motion, Earl argued that the court's prior omnibus order obligated the State to provide Earl with the names, addresses, and statements of all of its witnesses.  He maintained that the State failed to convey the statements justifying dismissal of the charges or, at the very least, a continuance.  On appeal, Earl argues that his trial counsel was left with only three days to consider and react to the statements' content.  Earl asserts that the "interests of justice" justified a continuance and, now, compel reversal of the District Court's denial of his motion.

¶13     A ruling on a motion to continue is subject to the district court's discretion.  *State v. Borchert* (1997), 281 Mont. 320, 324, 934 P.2d 170, 173.  We review discretionary district court rulings to determine whether the court abused its discretion.  *Borchert*, 281 Mont. at 324, 934 P.2d at 173.

¶14     Section 46-13-202, MCA, provides:

> **Motion for continuance.** (1) The defendant or the prosecutor may move for a continuance.  If the motion is made more than 30 days after arraignment or at any time after trial has begun, the court may require that it be supported by affidavit.

4

(2) The court may upon the motion of either party or upon the court's own motion order a continuance if the interests of justice so require.

(3) All motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial.

¶15 On the morning of trial, the District Court entertained oral argument on Earl's motion to continue. The State notified the court that: this is not a case where the State rejected the defense's request for a document; it had a transmittal letter dated May 19, 2000, indicating that the State sent a copy of Ames' report to Earl; "for quite some time" prior to trial Earl had in his possession a psychosexual evaluation, conducted in March 2001, which referenced the witness statements; it maintains an open file policy which would have permitted Earl to copy the statements at any time throughout the pendency of the charges; and it faxed the statements to Earl on January 25, 2002. Based on this information, the Stillwater County Attorney concluded, "it's my belief that he had it all, but even if he didn't have it, I think it was incumbent upon the defendant to come in and check and make sure he had everything we had in our file."

¶16 Earl acknowledged the State's open file policy but, nevertheless, "assumed that all of the documents had been sent." Earl's trial counsel conceded that "the Court's admonition to me on Friday that I maybe ought to have looked a little closer is well-taken." Further, Earl's trial counsel claimed that he never received the May 19, 2000, transmittal letter or accompanying documents.

¶17 Following the parties' arguments, the District Court concluded:

> Based on arguments of counsel, it's clear to the Court that the Stillwater County Attorney's Office does have an open file policy. Wherein, the defendant can, as I understand it, come and review all of the evidence that's in the State's file and make such copies and reproductions of the materials in that file as the defendant deems warranted.
>
> Furthermore, the Court is very aware that this case has gone on for almost two years . . . . And there has been an abundance of time for counsel to make such discovery as counsel needs to make.
>
> Also, the omnibus hearing order provides that if discovery is not made, that a motion can be brought to the Court to compel such discovery as may be necessary. Clearly, to make such motion the Friday before the Monday of trial is not a timely motion in the Court's view.
>
> Further, I would, for the record, state that the statute says that, "The State shall make available to the defendant for examination and reproduction . . . the materials which the defendant has referred [sic]." And clearly, based on what's before the Court here, the State has discharged its statutory obligation. For those reasons, the motion is denied.

¶18 In addressing Earl's motion to continue, the District Court was to consider "the interests of justice" and "the diligence shown by the movant." The record suggests something other than a diligent effort on the part of Earl's trial counsel to obtain the requisite information. Further, Earl has not presented a compelling argument that the "interests of justice" mandated a continuance. For these reasons, we hold that the District Court did not abuse its discretion when it denied Earl's fourth motion to continue.

ISSUE TWO

¶19 Did the District Court properly instruct the jury?

6

¶20 Upon settling jury instructions, the State offered sixteen instructions. Earl objected to only one instruction, instruction number twelve which defined "sexual contact." Initially, Earl offered only one instruction. However, Earl withdrew the instruction following the court's decision to utilize instruction number twelve over Earl's objection.

¶21 On appeal, Earl states that the District Court erred when it failed to: instruct the jury on the elements of sexual assault; instruct the jury about a factor which would increase the maximum statutory penalty; and properly instruct the jury on the definitions of "sexual contact," "without consent," and "knowingly." Earl concedes that his trial counsel objected to the "sexual contact" instruction only. However, Earl insists that we should address all of the allegedly erroneous instructions pursuant to the common law plain error doctrine.

¶22 In criminal cases, jury instructions must be reviewed as a whole, and if they fully and fairly present the law to the jury, the jury has been properly instructed. *State v. Detonancour*, 2001 MT 213, ¶ 57, 306 Mont. 389, ¶ 57, 34 P.3d 487, ¶ 57. The test to be applied is whether, when an instruction is considered as a part of the whole body of instructions, the instruction is prejudicial to the appealing party. *Detonancour*, ¶ 57.

¶23 Section 46-16-410(3), MCA, provides that "[a] party may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the settlement of instructions." Generally, an appellant must establish that an objection was made at trial on the same basis as the error asserted on appeal. *State v. Davis*, 2000 MT 199, ¶ 38, 300 Mont. 458, ¶ 38, 5 P.3d 547, ¶ 38. Requiring a defendant to specifically raise the objection

7

at trial gives the prosecution and trial court an opportunity to avoid or correct the purported error. *Davis*, ¶ 38. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in § 46-20-701(2), MCA. Section 46-20-104(2), MCA.

¶24 With respect to the jury instructions, four out of five of Earl's assignments of error have been raised for the first time on appeal. Earl does not assert that we should consider his untimely objections pursuant to § 46-20-701(2), MCA. Instead, Earl submits that we should entertain his assignments of error pursuant to the common law plain error doctrine.

¶25 We have stated our standard of review for plain error as follows:

> [T]his Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.

*State v. Finley* (1996), 276 Mont. 126, 137, 915 P.2d 208, 215, *overruled on other grounds by State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817. The plain error doctrine is to be employed sparingly, on a case-by-case basis, pursuant to the narrow circumstances articulated in *Finley*. *Finley*, 276 Mont. at 138, 915 P.2d at 215. Plain error review should not act as "a prophylactic for careless counsel." *State v. Price*, 2002 MT 284, ¶ 23, 312 Mont. 458, ¶ 23, 59 P.3d 1122, ¶ 23.

¶26 Based on our review of the record and the arguments presented, we do not believe that failing to review the four previously unraised objections will result in a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the trial, or compromise

the integrity of the judicial process. Since we decline to invoke our discretionary plain error review and since Earl did not lodge an objection to four of the five assignments of error at trial, Earl did not preserve those issues for our consideration on appeal. Earl did object to the "sexual contact" instruction at trial. Therefore, we will proceed to analyze the validity of that instruction.

¶27 The District Court utilized Montana Criminal Jury Instruction 2-107 (1999) in instructing the jury on the definition of "sexual contact." That instruction provides:

> "Sexual contact" means the touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely arouse or gratify the sexual response or desire of either party.

The comment to the above instruction states that "[t]he definition in this instruction only applies to offenses committed on or after October 1, 1999."

¶28 Prior to October 1, 1999, the Legislature defined "sexual contact" as "any touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party." *See* § 45-2-101(65), MCA (1997). As the 1997 definition does not contain the "directly or through clothing" language and as Earl committed the alleged offenses prior to October 1, 1999, Earl argues that "the amended definition of 'sexual contact' did not apply to the facts of this case, and, therefore, the jury was improperly instructed upon the definition of 'sexual contact.'"

¶29 In *State v. Olson* (1997), 286 Mont. 364, 951 P.2d 571, the defendant argued that the prosecution did not prove its sexual assault charge beyond a reasonable doubt, in part,

9

because the victim had clothing on at the time of the alleged sexual contact. We rejected this argument, stating "Olson did not have to have direct contact with T.H.'s vaginal area underneath her clothing to have sexual contact with her. His rubbing T.H.'s vaginal area on the outside of her clothing was sufficient evidence to prove sexual contact." *Olson*, 286 Mont. at 374, 951 P.2d at 577 (citation omitted).

¶30 Upon objection to the State's "sexual contact" instruction, the court and Earl's trial counsel engaged in the following colloquy:

> Court: Well, Mr. Johnson, what would be wrong with such an instruction in light of State versus Olson . . . ?
>
> Mr. Johnson: Well, Your Honor, in State versus Olson, they're talking about . . .
>
> Court: It seems to be the same kind of conduct alleged here. And I don't know how–
>
> Mr. Johnson: I will at this point concede that, Your Honor.
>
> Court: I'm going to give Plaintiff's Offered Instruction No. 12 because I believe it's a correct statement of the law of Montana.

We conclude that, pursuant to *Olson*, the "sexual contact" instruction given to the jury accurately represented the law. Therefore, the jury was properly instructed.

### ISSUE THREE

¶31 Did the State present sufficient evidence for the jury to convict Earl of sexual assault against T.W. and A.W.?

¶32 For various reasons Earl contends that the evidence was insufficient to establish that he had "sexual contact" with T.W. and A.W. We review the sufficiency of evidence to

10

support a conviction by viewing the evidence in a light most favorable to the prosecution and then determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Haser*, 2001 MT 6, ¶ 18, 304 Mont. 63, ¶ 18, 20 P.3d 100, ¶ 18.

¶33 Section 45-5-502(1), MCA, provides that "[a] person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault." As indicated above, the court instructed the jury that "sexual contact" meant "the touching of the sexual or other intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely arouse or gratify the sexual response or desire of either party."

¶34 With regard to T.W., Ames testified as follows:

> [Earl] also admitted that he's touched her in the crotch area before, but it wasn't–I think he phrased it, "in that sort of manner." Then he said several times during the interview that he never touched her skin-to-skin. Also, during the interview he made a comment something like that it's a shame that he liked a 6-year-old more than he did his wife.

Further, T.W. testified to the following:

> Q: Can you tell us–what did you tell the undersheriff when you talked to him, do you remember?
>
> A: Well, that [Earl] molested me.
>
> . . . .
>
> Q: Now, do you remember an incident when you were watched by Mr. Earl?
>
> A: Uh-huh.

11

. . . .

Q: And so what happened with that incident?

A: I'm not sure, but he just started . . . touching me.

Q: When you say he started to touch you, do you know what area of your body he did touch you?

A:  (Witness nods.)

Q: And where would that be? [T.W.], would it be easier to show us instead of saying it?

A: No.  Down below the waist.

. . . .

Q: And so how did that make you feel?

A: Uncomfortable, very uncomfortable.

Q: Did you say anything to him then?

A: I told him to stop.

Q: And what did he do?

A: He stopped it, but it kept going on.  After a few days, he started to do it again.

Q: Now, did he say anything about whether or not you should tell anybody?

A: He told me not to tell anyone.

¶35    As for the alleged sexual assault on A.W., A.W. testified that on one particular evening when she was thirteen Earl bought a bottle of alcohol for her and Earl's girlfriend, Lynette.  After consuming the alcohol, Earl, Lynette, and A.W. all laid down on a bed.

12

Then, according to A.W., they "were all laying on the bed, next thing you know I felt a hand going down my pants and I kind of rolled over and it happened again. . . . I rolled off the bed to get away from him." Earl testified on his own behalf at trial and denied T.W. and A.W.'s accounts of the events.

¶36 As we stated above, the standard of review for challenges to the sufficiency of evidence supporting a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *State v. Brown* (1989), 239 Mont. 453, 457, 781 P.2d 281, 284. Based on a review of the foregoing testimony, in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State proved the essential elements of the crimes beyond a reasonable doubt.

## ISSUE FOUR

¶37 Are Earl's claims of ineffective assistance of counsel record-based and, therefore, subject to review on direct appeal?

¶38 Earl argues that the assistance he received from his trial counsel "fell short of the range of competence required of attorneys in criminal cases." Earl cites fifteen instances where the actions or inactions of his trial counsel evince the purportedly ineffective representation. To more efficiently address Earl's allegations, we have recharacterized the ineffective assistance claims and divided them into two categories: (1) inadequate

13

investigation, failure to prepare a defense, lack of familiarity with the law, failure to inform Earl of his rights and options, inadequate jury instructions, and inadequate voir dire; and (2) failure to object to witness testimony, inadequate opening statement, and inadequate cross examinations.

¶39 In considering ineffective assistance of counsel claims on direct appeal or in postconviction proceedings, we apply the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Pursuant to the *Strickland* test, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10 (citations omitted). Before we will address the merits of ineffective assistance claims, we must determine whether the claims are properly before the Court or whether they are procedurally barred. Where ineffective assistance claims are based on facts of record they must be raised on direct appeal. *State v. White*, 2001 MT 149, ¶ 12, 306 Mont. 58, ¶ 12, 30 P.3d 340, ¶ 12. Conversely, where the ineffective assistance allegations cannot be documented from the record, the claims must be raised by petition for postconviction relief. *White*, ¶ 12.

¶40 In *White*, we stated that "[a]s for those clearly non-record based areas of representation, this Court has identified counsel's failure to adequately investigate, or failure to prepare a defense, or failure to familiarize him or herself with critical areas of the applicable law." *White*, ¶ 18. Further, we concluded that "the failure to fully inform a defendant of the consequences of his various options and rights may constitute a non-record

14

ineffective assistance claim–although the prejudicial results of the ineffectiveness appear on the record." *White*, ¶ 18. We also stated that the "failure of counsel to offer a particular jury instruction, generally, will be a non-record matter as well." *White*, ¶ 19. Finally, we recently concluded that "[t]he reasons for counsel's actions or inactions [during voir dire] should not be 'assumed' but should be the subject of a postconviction evidentiary inquiry." *State v. Herrman*, 2003 MT 149, ¶ 30, ___ Mont. ___, ¶ 30, ___ P.3d ___, ¶ 30. Based on the foregoing, all of Earl's ineffective assistance claims which we have assigned to the first category are non-record based claims and, therefore, are not properly before us on direct appeal. We now turn to the second category of ineffective assistance claims.

¶41 Generally, an alleged failure to object to witness testimony constitutes a record-based action and, therefore, appropriate for direct appeal. *White*, ¶ 15. Alternatively, decisions regarding the timing and number of objections lie within counsel's tactical discretion and, thus, should not be considered on direct appeal. *White*, ¶ 16. Rendering an improper opening statement or closing argument may qualify as a record-based instance of ineffective assistance. *White*, ¶ 17. However, we have also stated:

> Though not easily distilled into a formula, the definitive question that distinguishes and decides which actions are record and which are non-record, is *why*? In other words, if counsel fails to object to the admission of evidence, or fails to offer an opening statement, does the record fully explain *why* counsel took the particular course of action? If not, then the matter is best-suited for postconviction proceedings which permit a further inquiry into whether the particular representation was ineffective. Only when the record will fully explain why counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal.

*White*, ¶ 20.

15

¶42    As for the second category of ineffective assistance of counsel claims, we conclude that the record simply does not explain why Earl's trial counsel undertook the allegedly insufficient actions.  That is, the record does not indicate why Earl's trial counsel: presented a brief opening statement to the jury, cross examined A.W. and Lynette the way he did, and did not object to certain expert and lay witness testimony.  Accordingly, we hold that the second category of ineffective assistance claims are non-record based and, therefore, cannot be reviewed on direct appeal.

¶43    Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE

16