No. 98-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 122

294 Mont. 427

982 P.2d 440

STATE OF MONTANA,

Plaintiff and Respondent,

v.

AMBROSE PAUL MARTINOSKY,

Defendant and Appellant.

No

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John Larson, Judge presiding.


COUNSEL OF RECORD:


For Appellant:


Lisa B. Kauffman, Attorney at Law, Missoula, Montana


For Respondent:


Hon. Joseph P. Mazurek, Attorney General; Carol Schmidt, Assistant

Attorney General, Helena, Montana


Fred R. VanValkenburg, Missoula County Attorney, Missoula, Montana


Submitted on Briefs: March 18, 1999

Decided: May 28, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Ambrose Paul Martinosky (Martinosky) appeals from the judgment entered by the Fourth Judicial District Court, Missoula County, on a jury verdict finding him guilty of driving under the influence of alcohol (DUI) and criminal endangerment. We affirm.**

**¶2. Martinosky raises the following issues:**

**¶3. 1. Did the District Court abuse its discretion in admitting Martinosky's confession as evidence of the offense of DUI?**

**¶4. 2. Did the District Court err in refusing Martinosky's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment?**

BACKGROUND

**¶5. At approximately 10:30 p.m. on August 22, 1997, Rosie Rogers (Rogers), Martinosky's common-law wife, went to Buck's Club, a bar in Missoula, Montana. Upon entering the bar, Rogers saw Martinosky dancing with another woman and Rogers and Martinosky argued. Both began dancing with other people in the bar to make each other jealous and their argument continued periodically over the next**

several hours. Martinosky eventually went outside and the bar's bouncer informed him he would not be allowed back inside. At the same time, a bar employee called the police at Rogers' request. Martinosky then got into his white Chevrolet pickup truck, backed the truck into the driver's side of Rogers' parked vehicle, and drove away.

¶6. Missoula Police Department (MPD) Officer Geron Wade (Wade) was dispatched to the reported disturbance at Buck's Club. As Wade approached the bar in his patrol car, he heard tires squealing on pavement and a crunching sound, then saw a white truck pull away from a red car and drive quickly away from the bar. Believing that the truck was leaving the scene of an accident, Wade followed it down the street. Wade activated the patrol car's top lights when he saw the truck run a stop sign and continued to follow the vehicle. The truck did not stop and Wade turned on the patrol car's siren. The truck's speed increased and a high-speed chase through a residential area of Missoula ensued. Wade testified he was driving at speeds of up to 65 miles per hour but was unable to catch up to the truck. He further testified that he observed the truck run two stop signs and one traffic light before he lost sight of it.

¶7. Wade continued to patrol the area after losing sight of the truck, eventually investigating an area where he had seen a cloud of dust. He discovered that the white truck had crashed through the garage and into the living room of a home on Mount Street. The truck's engine was still running, but there was no one inside. Law enforcement officers searched the area, but did not locate the driver. The following afternoon, Martinosky turned himself in to the MPD and made an audio-taped statement during which he confessed to the events of the previous evening. He also admitted he had been drinking that night and believed his drinking had impaired his ability to drive.

¶8. The State of Montana subsequently charged Martinosky by information with four offenses: Count I, failure to stop at the scene of an accident involving damage to a vehicle; Count II, DUI; Count III, criminal endangerment; and Count IV, failure to stop at the scene of an accident involving injury to a person. He pled guilty to Counts I and IV and a jury trial was held on the DUI and criminal endangerment charges. The jury found Martinosky guilty of both offenses and the District Court sentenced him and entered judgment. Martinosky appeals.

## DISCUSSION

**¶9. 1. Did the District Court abuse its discretion in admitting Martinosky's confession as evidence of the offense of DUI?**

**¶10. At trial, the prosecution sought to play the tape-recording of Martinosky's statement to law enforcement. Martinosky objected on the basis that, to the extent he had admitted he had been drinking on the night in question and that his drinking had impaired his ability to drive, the statement constituted a confession that he had committed the offense of DUI and the prosecution had not presented sufficient independent evidence on the DUI charge to allow admission of the confession under § 46-16-215, MCA. The District Court overruled Martinosky's objection, concluding that the prosecution had presented sufficient independent evidence of the DUI offense, and the tape was played to the jury. At the close of the prosecution's case-in-chief, Martinosky moved for a directed verdict on the DUI charge on essentially the same basis as his evidentiary objection. The District Court denied the motion and Martinosky asserts error.**

**¶11. Our standard of review of a district court's evidentiary rulings is whether the court abused its discretion. State v. Hayworth, 1998 MT 158, ¶ 28, 289 Mont. 433, ¶ 28, 964 P.2d 1, ¶ 28 (citation omitted). We also review a district court's ruling on a motion for a directed verdict in a criminal case to determine whether the court abused its discretion. <u>Hayworth</u>, ¶ 50 (citation omitted).**

**¶12. Section 46-16-215, MCA, provides that**

[b]efore an extrajudicial confession of the defendant to the crime charged may be admitted into evidence, the prosecution shall introduce independent evidence tending to establish the commission of the crime charged.

Martinosky contends that the prosecution failed to meet the requirements of the statute because the only evidence relating to the DUI charge other than his confession was that he was speeding and that Rogers smelled alcohol on him, and that this evidence was insufficient to establish the offense of DUI.

**¶13. The prosecution presented evidence at trial establishing that Martinosky spent several hours at Buck's Club on the night in question. Moreover, Rogers testified**

that she saw Martinosky carrying a glass containing what appeared to be an alcoholic beverage at Buck's Club and that, although she did not see him actually drink any alcohol, his behavior was consistent with past behavior she had observed when Martinosky had been drinking. Rogers also testified that she smelled alcohol on Martinosky, but conceded the odor of alcohol may have resulted from her pouring a beer over his head.

¶14. Furthermore, Wade testified that he saw Martinosky's truck leaving the scene of an accident, the driver of the truck did not stop when Wade activated his patrol car's emergency lights and siren, the truck failed to stop at two stop signs and a stop light, and the truck was traveling at an excessively high rate of speed through a residential area. Wade also stated that speeding and other improper driving maneuvers can be indicators that a driver is under the influence of alcohol. Moreover, the Montana Highway Patrol officer who investigated the accident scene where the truck crashed into the house determined that the truck was traveling in excess of 90 miles per hour when the driver lost control of the vehicle. We have held that the manner in which a vehicle is driven, including excessive speed and failing to stop when signaled to stop by law enforcement, can be evidence that the driver is under the influence of alcohol. State v. Palmer (1991), 247 Mont. 210, 216-17, 805 P.2d 580, 584 (citation omitted).

¶15. As stated above, § 46-16-215, MCA, requires that the prosecution must introduce independent evidence "tending to establish" commission of the crime charged before a defendant's confession may be admitted into evidence. The statute does not require evidence establishing the crime beyond a reasonable doubt or even evidence establishing a *prima facie* case that the offense was committed. We conclude that the testimony set forth above tends to establish the commission of the offense of DUI and that it was sufficient, under § 46-16-215, MCA, to allow the admission into evidence of Martinosky's statements that he had been drinking on the night in question and that he believed his ability to drive was impaired as a result. We hold that the District Court did not abuse its discretion in admitting Martinosky's confession as evidence of the offense of DUI.

¶16. 2. Did the District Court err in refusing Martinosky's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment?

¶17. Martinosky was charged with criminal endangerment, a felony, in violation of §

45-5-207, MCA, for knowingly engaging in conduct that created a substantial risk of death or serious bodily injury to another by driving at excessive speeds through a residential area while fleeing from law enforcement, losing control of his vehicle and crashing into a house. During settlement of jury instructions, Martinosky offered a proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. The District Court refused the instruction and Martinosky asserts error.

¶18. A criminal defendant is entitled to a jury instruction on a lesser included offense if, in light of the evidence presented, the jury could be warranted in finding the defendant guilty of the lesser, rather than the greater, offense. Section 46-16-607(2), MCA; State v. Martinez, 1998 MT 265, ¶ 10, 968 P.2d 705, ¶ 10, 55 St.Rep. 1093, ¶ 10. Two criteria must be met, however, before entitlement to an instruction on a lesser included offense is established: (1) the offense must actually constitute a lesser included offense of the offense charged; and (2) there must be sufficient evidence to support a lesser included offense instruction. Martinez, ¶ 10.

¶19. Negligent endangerment is defined as negligently engaging in conduct which creates a substantial risk of death or serious bodily injury to another. Section 45-5-208(1), MCA. Martinosky argues that, in light of the evidence presented, the jury could have been warranted in finding that he acted negligently, rather than knowingly, when he made the decision to engage in a high-speed chase through residential streets in an effort to evade the police.

¶20. "Knowingly" is defined as follows:

a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct.

Section 45-2-101(34), MCA. In contrast, "negligently" is defined as follows:

a person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when the person consciously disregards a risk that the result

will occur or that the circumstance exists or when the person disregards a risk of which the person should be aware that the result will occur or that the circumstance exists.

Section 45-2-101(42), MCA.

**¶21. At trial, Wade testified that he signaled the driver of the white pickup truck, later identified as Martinosky, to stop by activating the patrol car's lights and siren, but that the truck increased its speed rather than stopping. He further testified that the truck failed to stop at two stop signs and a traffic light, and that the truck was traveling at speeds in excess of 65 miles per hour. Additionally, Martinosky admitted in his tape-recorded statement to law enforcement that he saw the patrol car with its lights flashing, that he did not want to be caught by police because he had been drinking and could not afford a DUI charge, and that he drove away to avoid the police. He further stated that he knew he had to be driving at least 80 miles an hour through city streets while trying to evade the police and that, after crashing into the house, he fled the scene to avoid being caught. Martinosky did not testify at trial, so no other evidence of his mental state on the night in question was presented.**

**¶22. We conclude that, contrary to Martinosky's assertion, the evidence set forth above would not support a finding that he acted negligently by consciously disregarding the risk of the outcome of his actions when he decided to evade law enforcement. Rather, the evidence establishes that Martinosky was fully aware of his actions and the probable outcome of those actions, thus acting knowingly. We further conclude, therefore, that the evidence did not support an instruction on negligent endangerment. Because the evidence did not support Martinosky's offered instruction, we need not address whether negligent endangerment is a lesser included offense of criminal endangerment. See Martinez, ¶ 10. We hold that the District Court did not err in refusing Martinosky's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment.**

**¶23. Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler concurring in part and dissenting in part.

**¶24. I concur with the majority's conclusion that there was sufficient independent evidence of driving under the influence of alcohol to permit admission of the defendant's extra-judicial statements that he had been drinking on the night in question.**

**¶25. I dissent from the majority's conclusion that the District Court did not err when it refused to submit an instruction to the jury regarding the lesser included offense of negligent endangerment.**

**¶26. Section 46-1-202(8), MCA, provides that:**

"Included offense" means an offense that:

. . . .

(c) differs from the offense charged only in the respect that . . . a lesser kind of culpability suffices to establish its commission.

Negligent endangerment is a lesser included offense of criminal endangerment because it requires a lesser degree of culpability.

¶27. A person commits the offense of criminal endangerment, in violation of § 45-4-207, MCA, when he "<u>knowingly</u> engages in conduct that creates a substantial risk of death or serious bodily injury to another." (Emphasis added.) A person commits the offense of negligent endangerment, in violation of § 45-5-208(1), MCA, when he "<u>negligently</u> engages in conduct that creates a substantial risk of death or serious bodily injury to another." (Emphasis added.)

¶28. Because the only difference between criminal endangerment and negligent endangerment is the state of mind with which the accused person acts, negligent endangerment is, by statutory definition, a lesser included offense of criminal endangerment.

¶29. Section 46-16-607(2), MCA, requires that "[a] lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense."

¶30. To sustain a conviction of criminal endangerment pursuant to § 45-5-207, MCA, the State had to prove more than that Martinosky was aware of his conduct, or that he knowingly engaged in a high speed chase to avoid apprehension. The State had to prove that he was aware of a high probability that by operating his motor vehicle at an excessive rate of speed he would cause death or serious bodily injury to another.

¶31. In this case, Martinosky was charged with criminal endangerment for creating a substantial risk of death or serious bodily injury to Tom and Barbara Siegel and Duane and Shelley Gilstad by the manner in which he operated his vehicle. While the jury found that he was aware of a high probability of the risk of death or serious bodily injury (the test for "knowingly"), it could just as easily have found that he acted with a conscious disregard of the risk to others (the test for "negligently").

¶32. Other than the penalty, the difference between criminal endangerment and negligent endangerment is the state of mind of the person who engages in the prohibited conduct. Because Martinosky did not testify, the jury had to determine his state of mind by inference from his conduct.

¶33. The only evidence in this case was that Martinosky was intoxicated, drove his vehicle at an extremely high rate of speed, lost control, and drove into the home of

**Tom and Barbara Siegel.**

**¶34. Did Martinosky know at the time he operated his motor vehicle that crashing into someone's home would probably result from his conduct, or did he simply act with a conscious disregard for the possibility that this result could occur? Based on the limited evidence in this case, and the reasonable inferences that could be drawn therefrom, any reasonable juror could just as well find one state of mind as the other. There is no rational basis for the majority or the District Court to conclude that one state of mind was supported by the evidence, but the other state of mind was not supported by the evidence.**

**¶35. By statute, the District Court in this case was required to instruct the jury on the lesser included offense of negligent endangerment because the jury, based on the evidence, could just as well have found that Martinosky acted with a conscious disregard of the risk that his conduct presented to others, as it could have found that he was aware of a high probability of risk to others.**

**¶36. For these reasons, I dissent from the majority's conclusion that the District Court did not err when it refused to instruct the jury on the lesser included offense of negligent endangerment.**

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing concurring and dissenting opinion.

/S/ WILLIAM E. HUNT, SR.

No