DA 13-0113

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 63

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

WILLIAM GROVER SHEGRUD,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
                  In and For the County of Ravalli, Cause No. DC 11-169
                  Honorable Jeffrey H. Langton, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Jeanne M. Walker, Hagen & Walker, PLLC, Billings, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
                Attorney General, Helena, Montana

                William E. Fulbright, Ravalli County Attorney, Hamilton, Montana


                          Submitted on Briefs:  February 5, 2014
                                  Decided:  March 11, 2014


Filed:

                                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     William Shegrud (Shegrud) appeals from the judgment of the Montana Twenty-first Judicial District Court, Ravalli County, sentencing him for his jury conviction of felony criminal endangerment and for two misdemeanor offenses.  We reverse and remand.

## ISSUE

¶2     We review the following issue:

1.     *Did the District Court err by declining Shegrud's proposed jury instruction of negligent endangerment as a lesser included offense of criminal endangerment?*

Because we reverse and remand for a new trial on this issue, we do not reach the other issues Shegrud has raised in his appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On December 16, 2011, around 6:38 p.m., Ravalli County dispatch received a 911 report of a maroon pickup truck headed northbound on the Eastside Highway, towards Stevensville, Montana, driving erratically.  The caller testified that the truck slowed down and made a turn at the Middle Burnt Fork Road intersection; then, turned again onto College Street.  Police Chief Marble heard the attempt to locate (ATL) while at his office.  After hearing that the truck had turned off the Eastside Highway and continued onto College Street, Chief Marble headed towards Sixth Street, to try to intercept the vehicle on College Street.  At the intersection of College Street and Sixth Street, he found a red truck at a stop sign.  He saw Shegrud driving the truck.  Looking down College Street, he did not see any reddish-maroon vehicles coming, so he decided to follow the red truck.  As he followed the truck, he saw no sign Shegrud was driving erratically.  The truck pulled into a gas station and

Chief Marble radioed another Sargent, Birkeneder, to respond, because he was no longer within his jurisdiction.

¶4    Sargent Birkeneder walked up behind the truck and saw a five-year old girl, Shegrud's daughter, in a child safety seat in the rear seat of the truck. Shegrud came out of the gas station carrying a twenty-four pack of beer. While speaking with Shegrud, Sargent Birkeneder could smell the odor of an alcoholic beverage on his breath. He observed Shegrud's eyes were red and watery and his speech was slurred. Based on Sargent Birkeneder's training and experience, it was "almost immediately obvious" to him that Shegrud was "intoxicated, he was impaired." Because Sargent Birkeneder was coming off his shift, he radioed Deputy Wofford and turned the investigation over to him. Deputy Wofford arrived within five or ten minutes.

¶5    Shegrud told Deputy Wofford that he had drunk two "tallboys." He did not say where he had consumed the tallboys. Shegrud's ex-wife testified that Shegrud had not appeared intoxicated to her when he had come to pick up his daughter about an hour earlier. Deputy Wofford administered field sobriety tests on Shegrud. He noticed Shegrud appeared drowsy and asked whether Shegrud was under the influence of anything else. Shegrud said he had taken oxycodone, which he had been prescribed for his back injury. Based on the totality of the circumstances, Deputy Wofford arrested Shegrud for driving under the influence (DUI) and criminal endangerment. After he was arrested, Shegrud agreed to a blood test. The blood test revealed a concentration of .07 grams of alcohol per 100 milliliters of blood, and .06 milligrams per liter of oxycodone. Shegrud's blood alcohol content was below the legal

limit and his level of oxycodone was within therapeutic ranges when applying the margin of error. Shegrud was on felony probation at the time.

¶6 Prior to the jury trial on June 11-13, 2012, Shegrud pled guilty to Driving with a Suspended License and Displaying License Plates Assigned to Another Vehicle. The jury was unable to reach a unanimous verdict on the charges of felony criminal endangerment and felony DUI. The court declared a mistrial. The jury trial was reset for September 17-19, 2012. At the second trial, Shegrud's counsel offered a jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. The court declined to give that instruction. The jury found Shegrud guilty of criminal endangerment, but could not reach a verdict on the DUI charge. Shegrud was sentenced for twenty years to the Department of Corrections with fifteen suspended, as a persistent felony offender.

## STANDARD OF REVIEW

¶7 The standard of review of a trial court's refusal to give an instruction on a lesser included offense is whether the trial court abused its discretion. *State v. Feltz*, 2010 MT 48, ¶ 14, 355 Mont. 308, 227 P.3d 1035. We review claims of instructional error in a criminal case to determine whether the jury instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Matz*, 2006 MT 348, ¶ 13, 335 Mont. 201, 150 P.3d 367 (quotation omitted). Since a trial court has broad discretion when instructing a jury, reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights. *Matz*, ¶ 13 (quotation omitted).

4

**DISCUSSION**

¶8   *1. Did the District Court err by declining Shegrud's proposed jury instruction of negligent endangerment as a lesser included offense of criminal endangerment?*

¶9   Section 46-16-607(2), MCA, provides that "[a] lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." *See also Feltz*, ¶ 17. A defendant is entitled to a lesser included offense instruction if two criteria are met: (1) the offense is a lesser included offense as defined by § 46-1-202(9), MCA; and (2) there is sufficient evidence to support an instruction on the lesser included offense. *Feltz*, ¶ 17.

   **a. Lesser included offense.**

¶10   The Dissent in *State v. Martinosky*, 1999 MT 122, ¶ 28, 294 Mont. 427, 982 P.2d 440, argued that negligent endangerment is, by statutory definition, a lesser included offense of criminal endangerment. Because we found that the evidence in that case did not support an instruction on negligent endangerment, we did not decide that issue. *See Martinosky*, ¶ 22. We address the issue now.

¶11   An offense constitutes a lesser included offense if it "differs from the offense charged only in the respect that . . . a lesser kind of culpability suffices to establish its commission." Section 46-1-202(9)(c), MCA. A person commits the felony offense of criminal endangerment in violation of § 45-5-207, MCA, when he or she "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another[.]" Section 45-5-207(1), MCA. A person commits the misdemeanor offense of negligent endangerment

5

in violation of § 45-5-208, MCA, when he or she "negligently engages in conduct that creates a substantial risk of death or serious bodily injury to another[.]" A person acts knowingly for the purposes of criminal endangerment when "the person is aware that it is highly probable that the result [of death or serious bodily injury to another] will be caused by the person's conduct." Section 45-2-101(35), MCA; *see State v. Lambert*, 280 Mont. 231, 236, 929 P.2d 846, 849 (1996) (criminal endangerment is a result-based offense). In contrast, a person acts negligently for the purposes of endangerment when "the person consciously disregards a risk that the result [of death or serious bodily injury to another] will occur . . . or when the person disregards a risk of which the person should be aware that the result will occur[.]" Section 45-2-101(43), MCA; *see Lambert*, 280 Mont. at 236, 929 P.2d at 849.

¶12 The only difference between criminal endangerment and negligent endangerment is the state of mind with which the accused person acts. Negligence, in this context, gives rise to a lesser culpability than does acting knowingly. We therefore hold that negligent endangerment is, by statutory definition, a lesser included offense of criminal endangerment.

### b. Sufficiency of the evidence.

¶13 Having determined that negligent endangerment is a lesser included offense of criminal endangerment, we now address whether there is sufficient evidence to support an instruction on negligent endangerment. *See Feltz*, ¶ 17. The evidence is sufficient to support an instruction on a lesser included offense if "the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." Section 46-16-607(2), MCA. The evidence does not support a lesser included offense

6

instruction on negligent endangerment where the evidence shows clearly that the defendant acted knowingly. *See Martinosky*, ¶¶ 21-22. Nor does the evidence support a lesser included offense instruction where the defendant's evidence or theory, if believed, would require an acquittal. *State v. Martinez*, 1998 MT 265, ¶ 15, 291 Mont. 265, 968 P.2d 705.

¶14    This case is different from *Martinosky*, where the clear evidence of the defendant's mental state did not support an instruction on negligent endangerment. Martinosky was convicted of criminal endangerment related to a high-speed car chase through residential streets. He had admitted in a tape-recorded statement "that he saw the patrol car with its lights flashing, that he did not want to be caught by police because he had been drinking and could not afford a DUI charge, and that he drove away to avoid the police." *Martinosky*, ¶ 21. He also admitted that he knew he had to be driving at least eighty miles an hour and that he fled the scene after crashing into a house to evade police. *Martinosky*, ¶ 21. We determined that this evidence conclusively established that Martinosky acted knowingly and, therefore, it did not support an instruction on negligent endangerment. *Martinosky*, ¶ 22. The evidence here is less conclusive. Shegrud's statements to officers that he had drunk two tallboys and taken prescribed oxycodone did not clearly establish awareness of a high probability that death or serious bodily injury would be caused by his conduct. The jury had to infer Shegrud's mental state from the evidence of his conduct presented at trial. Shegrud did not flee law enforcement or even respond to questioning evasively. Based on the evidence, the jury could as reasonably have inferred that Shegrud acted negligently as inferred that he acted knowingly.

7

¶15 Unlike *Martinez*, this is not a case where Shegrud's defense theory, if believed, would require acquittal. In *Martinez*, a bystander provided the primary testimony to support Martinez's conviction for criminal endangerment. *Martinez*, ¶ 17. Martinez argued on appeal that the jury could reasonably have found the bystander's testimony not credible and found him guilty of only negligent endangerment. *Martinez*, ¶ 19. We rejected that argument, reasoning that if the jury had discounted the bystander's testimony, there would have been no evidence at all about Martinez's actions and Martinez would have had to be acquitted. *Martinez*, ¶ 20. Because Martinez's theory of defense, if believed, would require acquittal, the Court found the evidence did not support a proposed jury instruction on negligent endangerment and did not reach the question of whether negligent endangerment is a lesser included offense of criminal endangerment. *Martinez*, ¶¶ 19-20. The instant case is distinguishable because a variety of evidence in the record could support a conviction of negligent endangerment. Shegrud's conviction did not hinge on the testimony of one key witness; and his theory, if believed, would not require acquittal. In fact, the jury's inability to reach a verdict on the DUI charge suggests that Shegrud's theory of defense gained some traction with the jury, although it nonetheless convicted him of criminal endangerment.

¶16 We conclude that here, sufficient evidence existed to support a jury instruction on negligent endangerment. Shegrud's defense theory was there was no competent evidence to establish beyond a reasonable doubt that he was driving impaired. The 911 caller reported a maroon truck and Shegrud's truck was red. The 911 caller never observed Shegrud driving the vehicle in question. No police officer observed Shegrud driving erratically. Shegrud's blood alcohol concentration was below the legal limit and his oxycodone level was within

therapeutic ranges. No expert testified that Shegrud was impaired. Shegrud admitted, however, that he had consumed alcohol in combination with oxycodone and had driven with his young daughter in his vehicle.

¶17 This evidence is sufficient to support both criminal and negligent endangerment instructions. Regardless of whether the reported truck belonged to Shegrud, or whether Shegrud was legally impaired, the evidence remained that Shegrud drove with his daughter in his truck after taking oxycodone and drinking alcohol. A jury could reasonably find from the evidence that Shegrud was aware that it was highly probable that this conduct would create a substantial risk of death or serious bodily injury to Shegrud's daughter. The evidence also supports a negligent endangerment instruction, as it could support the inference that Shegrud, instead, disregarded a risk of which he should have been aware that death or serious bodily injury to his daughter would occur.

¶18 Where, as here, a jury could be warranted in finding a defendant guilty of a lesser included offense, the district court is required to give a lesser included offense instruction if requested by the parties. Section 46-16-607(2), MCA (providing that a lesser included offense instruction *must* be given when the statutory criteria are satisfied). We conclude that the District Court abused its discretion when it failed to give Shegrud's proposed jury instruction on negligent endangerment. We further conclude that Shegrud was prejudiced by this error. He was convicted of a felony offense and was sentenced as a persistent felony offender pursuant to §§ 46-18-501, -502, MCA. Had he been convicted of misdemeanor negligent endangerment, his sentence would surely have been less onerous.

**CONCLUSION**

9

¶19    We reverse Shegrud's conviction of criminal endangerment and remand this matter to the District Court for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE