FILED

10/25/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0577

DA 15-0577

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 268

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

GEORGIE E. RUSSELL,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                     In and For the County of Hill, Cause No. DC 14-138
                     Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Lindsay A. Lorang, Lorang Law, PC, Havre, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
                Attorney General, Helena, Montana

                Gina Dahl, Hill County Attorney, Havre, Montana

Submitted on Briefs: August 10, 2016

Decided: October 25, 2016

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Georgie Russell fled from a traffic stop on the Rocky Boy Indian Reservation. Police officers pursued her at high speeds—with lights and sirens activated—off the Reservation and into Hill County. Russell drove erratically, badly damaging her car and causing oncoming traffic to swerve to avoid collision. Police officers eventually arrested Russell. The State charged her with criminal endangerment, among other offenses. At trial, Russell proposed a jury instruction on negligent endangerment as a lesser included offense. The District Court denied her request. The jury convicted Russell of criminal endangerment. She appeals.

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 In November 2014, Rocky Boy Tribal Officer Larry Bernard responded to multiple calls of a car driving "all over the road" on the Reservation. Officer Bernard spotted the car in question driving in the wrong lane. He activated his patrol car's lights to conduct a traffic stop, and the driver pulled the car to the side of the road.

¶4 Officer Bernard approached the stopped vehicle and recognized the driver as Georgie Russell. He noticed that Russell appeared intoxicated. Officer Bernard told Russell that he pulled her over because of multiple reports of her erratic driving. He asked her to turn off the engine, but she refused. When Officer Bernard attempted to open Russell's driver's-side door, Russell said either "fuck you" or "fuck this" and sped away.

2

¶5    Officer Bernard pursued Russell with his patrol car's emergency lights and siren on. Russell's car reached speeds of approximately 100 miles per hour. Officer Bernard observed Russell's car drift back and forth across the center line of the highway. This caused other vehicles on the road to swerve or pull to the side of the road to avoid colliding with her.

¶6    Russell drove beyond the Reservation boundary into Hill County. She then drove her car off the road, into a ditch, onto a raised railroad track, and back onto the road. Russell's car sustained a flat tire. Despite this, she continued to drive at high speeds, causing the tire to wear down to an exposed rim and to emit sparks.

¶7    Additional police officers joined the pursuit with their patrol cars' lights and sirens activated. The pursuing officers observed Russell's car's speed fluctuate dramatically. Other vehicles on the road continued to take evasive action as Russell's car weaved back and forth across the road. One driver drove into a ditch to avoid a collision with Russell's car. Even with her erratic driving, Russell still used her brakes and turn signal.

¶8    Russell eventually pulled her car to the side of the road and stopped. The pursuing officers arrested her. Upon arrest, the officers noticed that Russell's speech was slow and slurred, that she struggled to maintain her balance, and that she smelled of alcohol. The officers transported Russell to a detention facility. There, she took a sobriety test and showed further signs of intoxication, including poor motor skills and difficulty following directions.

¶9    Russell asked her arresting officers multiple times why she was in trouble. When an officer explained to Russell why she was under arrest, Russell appeared confused.

When the officer asked Russell why she had run from the police, Russell responded that she did not think she had been running.

¶10 The State charged Russell with fleeing from or eluding a peace officer, driving under the influence, and criminal endangerment. At trial, Russell requested a jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. The District Court refused Russell's proposed instruction. It concluded that the evidence established that Russell acted knowingly when she led the police on a high-speed chase, and it therefore held that the evidence could not support a jury finding that Russell had acted negligently. The jury convicted Russell of all three charged offenses.

¶11 Russell claims that the District Court should have instructed the jury on negligent endangerment and that she is entitled to a new trial on that basis.

## STANDARDS OF REVIEW

¶12 We review for abuse of discretion a trial court's refusal to give an instruction on a lesser included offense. *State v. Shegrud*, 2014 MT 63, ¶ 7, 374 Mont. 192, 320 P.3d 455. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. Stewart*, 2016 MT 1, ¶ 13, 382 Mont. 57, 363 P.3d 1140. We review claims of instructional error in a criminal case to determine whether the jury instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *Shegrud*, ¶ 7.

**DISCUSSION**

¶13    Russell argues that the District Court abused its discretion in refusing her proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment.  She contends that the evidence does not conclusively establish that she was fully aware of the probable outcome of her actions—in other words, that she acted knowingly—but instead that the evidence could have supported a jury finding that she acted negligently.

¶14    Montana law defines criminal endangerment as "knowingly [engaging] in conduct that creates a substantial risk of death or serious bodily injury to another." Section 45-5-207, MCA.  A person acts "knowingly" when the person is aware of a high probability that the person's conduct will result in death or serious bodily injury to another.  *Shegrud*, ¶ 11; § 45-2-101(35), MCA.  A court or jury may not take a defendant's voluntary intoxication into consideration when determining whether the defendant acted knowingly for the purposes of criminal endangerment.  *See* § 45-2-203, MCA.

¶15    In contrast to criminal endangerment, a person commits negligent endangerment when she "negligently engages in conduct that creates a substantial risk of death or serious bodily injury to another."  Section 45-5-208, MCA.  A person acts "negligently" when the person either "consciously disregards a risk" that the person's conduct will result in death or serious bodily injury to another, or when the person disregards such a risk "of which the person should be aware."  Section 45-2-101(43), MCA; *Shegrud*, ¶ 11.

¶16    A trial court must grant a request for a lesser included offense instruction when: (1) the offense is actually a lesser included offense of the offense charged, *Shegrud*, ¶ 9; (2) "there is a proper request by one of the parties" for such an instruction, § 46-16-607(2), MCA; and (3) there is "sufficient evidence" to support an instruction on the lesser included offense, such that "the jury, based on the evidence, could be warranted in finding the defendant guilty of [the] lesser included offense," *Shegrud*, ¶ 9 (quoting § 46-16-607(2), MCA).    The evidence does not support a lesser included offense instruction on negligent endangerment if it "shows clearly that the defendant acted knowingly" or if "the defendant's evidence or theory, if believed, would require an acquittal." *Shegrud*, ¶ 13.

¶17    Negligent endangerment constitutes a lesser included offense of criminal endangerment.  *Shegrud*, ¶ 12.   The record shows that the defendant made a "proper request" for an instruction on negligent endangerment, and the State does not argue otherwise.   Section 46-16-607(2), MCA.   Nor does either party assert that Russell's "evidence or theory, if believed, would require an acquittal."  *Shegrud*, ¶ 13.   Instead, the parties dispute only whether, based on the evidence, the jury could have been warranted in finding Russell guilty of negligent endangerment.

¶18    This Court agreed with the defendant in *Shegrud* that sufficient evidence existed to support a negligent endangerment instruction as a lesser included offense of criminal endangerment.  *Shegrud*, ¶ 16.  There, the police approached the driver of a pickup truck at a gas station after reports of a similar-looking truck driving erratically.  *Shegrud*, ¶¶ 3-4.  The police noticed that the driver, Shegrud, appeared intoxicated and

6

that his young daughter was seated in the backseat of his truck. *Shegrud*, ¶ 4. Shegrud admitted to drinking two "tallboy" beers and to taking prescribed oxycodone; blood tests, however, revealed that he was within the legal limits for both. *Shegrud*, ¶ 5.

¶19 We concluded that Shegrud's statements that he had consumed prescribed oxycodone and beer "did not clearly establish awareness of a high probability that death or serious bodily injury would be caused by his conduct." *Shegrud*, ¶ 14. The fact that Shegrud "did not flee law enforcement or even respond to questioning evasively" suggested further that he did not act knowingly. *Shegrud*, ¶ 14. We therefore held that the jury, based on the evidence, "could as reasonably have inferred that Shegrud acted negligently as inferred that he acted knowingly." *Shegrud*, ¶ 14.

¶20 In contrast, we held in *State v. Martinosky*, 1999 MT 122, 294 Mont. 427, 982 P.2d 440, that a District Court was correct to refuse the defendant's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. Martinosky backed his truck into a parked car outside of a bar, fled the scene of the collision, and ran a stop sign. *Martinosky*, ¶¶ 5-6. A police officer, using his patrol car's lights and siren, attempted to pull over Martinosky's truck. *Martinosky*, ¶ 6. In response, Martinosky sped up and led the officer on a high-speed chase through a residential area. *Martinosky*, ¶ 6. He eluded the pursuing officer, crashed his truck into a private home, and abandoned it. *Martinosky*, ¶¶ 6-7.

¶21 The next day, Martinosky turned himself in to the police. *Martinosky*, ¶ 7. He admitted that he had been drinking, that he knew he had sped through a residential neighborhood, and that he had fled from the police because he did not want to receive a

DUI. *Martinosky*, ¶ 21. This Court agreed that a negligent endangerment instruction was not justified because Martinosky's statements and behavior established that he was fully aware of his actions and the probable outcome of those actions; the evidence thus could not support a finding that Martinosky acted negligently. *Martinosky*, ¶ 22.

¶22 We conclude that this case is more like *Martinosky*. The record shows that Russell was aware that she was fleeing from the police. When Officer Bernard conducted the initial traffic stop, Russell pulled her car to the side of the road. She spoke with Officer Bernard, she refused his instruction to turn off her engine, she swore at him, and then she sped away. This indicates that Russell knowingly fled the traffic stop, similar to Martinosky's response to an attempted traffic stop by intentionally speeding away. *See Martinosky*, ¶¶ 6, 21.

¶23 Russell drove at high speeds away from Officer Bernard and from a number of other police officers. All of the officers pursuing her had activated their cars' emergency lights and sirens, supporting the District Court's conclusion that Russell had to have been aware of the officers' intentions to stop her vehicle. Russell used her brakes and turn signal, illustrating her general awareness while driving. These facts demonstrate Russell's knowledge that she was driving away from the police officers who were pursuing her, unlike Shegrud, who made no attempts to evade the police. *Shegrud*, ¶ 14.

¶24 The record establishes further that Russell, unlike Shegrud, was "aware that it [was] highly probable" that her conduct would cause harm to others. Section 45-2-101(35), MCA. She drove at high speeds, she forced oncoming traffic to take evasive measures to avoid colliding with her car, and she drove on a flat tire with an

8

exposed rim. This extreme behavior justified the District Court's determination that no reasonable jury could have been warranted in finding that Russell acted negligently and without awareness of the risk of harm that her conduct created.

¶25 Because the evidence demonstrates that Russell acted knowingly in engaging "in conduct that create[d] a substantial risk of death or serious bodily injury to another," § 45-5-207, MCA, the District Court did not abuse its discretion in concluding that the evidence was insufficient to support an instruction on the lesser included offense of negligent endangerment, *see Shegrud*, ¶ 9. "[T]he jury instructions, as a whole, fully and fairly instruct[ed] the jury on the law applicable to the case." *Shegrud*, ¶ 7. We conclude that the trial court did not abuse its discretion in refusing Russell's proposed instruction.

## CONCLUSION

¶26 We affirm the District Court's refusal of Russell's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. The judgment is affirmed.

/S/ BETH BAKER

We Concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE