Justice Beth Baker delivered the Opinion of the Court.
***120 ¶1 A Jefferson County jury found Corey D. Jensen guilty of two counts of criminal endangerment, one count of driving under the influence of alcohol, and one count of open container violation. Jensen was charged after he drove a dangerous section of I-15 at speeds up to 150 miles per hour. Jensen appeals the criminal endangerment convictions, arguing that the District Court erred in denying his proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 On September 21, 2015, shortly after 1:00 p.m., Montana Highway ***121 Patrol ("MHP") Trooper Michael Zufelt was traveling northbound on I-15 when he witnessed a lime green Dodge Challenger, whose driver was later identified as Jensen, traveling southbound between mile markers 176 and 177 at a high rate of speed. Zufelt clocked Jensen traveling 125 miles per hour in a 75-miles-per-hour zone. Zufelt crossed the median and turned around to initiate a traffic stop. Zufelt did not turn on his lights and sirens for approximately a mile to a mile and a half. He *119 testified that "at that kind of speeds" he did not want to alarm other drivers traveling on the road by turning on his emergency lights, so he waited until he got around those vehicles. When Zufelt turned his lights and sirens on, Jensen was traveling in the passing lane approximately a quarter to half a mile in front of Zufelt. Zufelt reached a maximum speed of 150 miles per hour and was unable to catch up to Jensen. At approximately mile marker 162, just south of Boulder, Zufelt chose to terminate the pursuit due to safety reasons and requested his dispatch to contact Butte troopers to let them know that the vehicle was possibly headed in their direction. By the time Zufelt discontinued his pursuit, Jensen had passed 17 different vehicles at a high rate of speed.
¶3 Jesse Hauer was driving one of the southbound vehicles that Jensen passed. Hauer testified that when the car passed him he heard a "scream to the left" of him, and the friend he was talking with over the Bluetooth system asked what the noise was. Because he did not feel safe, Hauer hung up his phone call and called his office to have them contact 911 and report that someone was going up around the corners of the pass at a high rate of speed and to see if they could get the vehicle slowed down or stopped. Hauer testified that he was worried that a car traveling that fast could collide with another vehicle and cause "serious injury at the very least." Hauer testified further that there is a "dip in the pass" on the passing lane that he personally slows down through because "it wants to throw you to the right-hand side of the lane as you're going the speed limit," and he could only "imagine what that felt [like] going at a high rate of speed."
¶4 Dispatch notified MHP troopers in Butte that the vehicle was possibly headed in their direction. Several troopers left Butte traveling northbound to locate the vehicle. Trooper Joseph E. Wyant located Jensen and clocked him driving 111 miles per hour. Trooper Wyant immediately turned on his emergency lights and sirens and "entered the median traveling directly at [Jensen]" to get him to slow down or stop. Jensen did not stop and continued southbound. Trooper Wyant accelerated his patrol vehicle to a top speed of 130 miles per hour, but he was unable to catch up to the vehicle.
***122 ¶5 MHP Sergeant Dave Oliverson also responded to the dispatch. Sergeant Oliverson, who has special training in investigating crash scenes, testified that "typically, in [his] experience, crashes that involve high rates of speed do result in either serious injury or even possibly death." He parked south of Trooper Wyant on a bridge at the crest of a hill to prepare for "spiking" the vehicle's tires. Sergeant Oliverson deployed the stop sticks in the median so that he could pull them across both lanes. Sergeant Oliverson saw Jensen brake rapidly when he crested the hill near the area where Sergeant Oliverson waited on the shoulder. Jensen ran over the stop sticks at approximately 10 to 15 miles per hour, deflating two of his tires, at which point he stopped his car. Sergeant Oliverson ordered Jensen out of the vehicle. Jensen asked Sergeant Oliverson why he punctured his tires. Sergeant Oliverson responded, "because [you were] running from the police." Trooper Zufelt caught up to the scene after Jensen was removed from the vehicle. He asked Jensen why he would not pull over for the emergency lights and sirens, and Jensen responded that "he liked driving fast, and he was a good driver." After troopers found an open container that Jensen admitted contained Pepsi and Jim Beam whiskey, the stop ripened into a DUI investigation.
¶6 The State charged Jensen with DUI, third offense, in violation of § 61-8-401, MCA ; ten counts of felony criminal endangerment, in violation of § 45-5-207, MCA ; misdemeanor possession of an open container, in violation of § 61-8-460, MCA ; misdemeanor fleeing/eluding a peace officer, in violation of § 61-8-316, MCA ; and misdemeanor reckless driving, in violation of § 61-8-301, MCA. The reckless driving charge later was removed in an amended information. Prior to trial, the State reduced the previously charged ten counts of criminal endangerment to two, one for Hauer and one for the other cars Jensen passed.
¶7 Jensen proposed jury instructions on the lesser included offense of negligent endangerment.
*120 The District Court reserved ruling on the issue until the close of the evidence. Jensen renewed his request at that time. The court declined to give Jensen's proposed instruction, concluding that the evidence did not support a finding that Jensen did not act knowingly. Following a two-day trial, the jury convicted Jensen of DUI (third offense), two counts of criminal endangerment, and the open container violation. The jury found Jensen not guilty of fleeing/eluding a peace officer.
STANDARD OF REVIEW
¶8 We review a district court's refusal to give an instruction on a ***123 lesser included offense for an abuse of discretion. State v. Russell , 2016 MT 268, ¶ 12, 385 Mont. 208, 383 P.3d 198. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. Russell , ¶ 12. We review claims of instructional error in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. Russell , ¶ 12.
DISCUSSION
¶9 A person commits the offense of criminal endangerment when he "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another." Section 45-5-207(1), MCA. A person commits negligent endangerment when he "negligently engages in conduct that creates a substantial risk of death or serious bodily injury to another." Section 45-5-208(1), MCA. Negligent endangerment is a lesser included offense of criminal endangerment because the only difference between the two offenses is the mental state with which the accused acts. State v. Shegrud , 2014 MT 63, ¶ 12, 374 Mont. 192, 320 P.3d 455. A person acts knowingly for the purposes of criminal endangerment when the person is aware "of the high probability that the conduct in which he is engag[ed] ... will cause a substantial risk of death or serious bodily injury to another." State v. Lambert , 280 Mont. 231, 237, 929 P.2d 846, 850 (1996). In contrast, a person acts negligently for the purposes of negligent endangerment when the person consciously disregards the risk that his conduct will result in a substantial risk of death or serious bodily injury to another or when the person disregards a risk of which the person should be aware that such a result will occur. Section 45-2-101(43), MCA.
¶10 "A lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." Section 46-16-607(2), MCA. Two criteria must be met before a defendant is entitled to a lesser included offense instruction. First, the offense must actually constitute a lesser included offense of the offense charged, and second, there must be sufficient evidence to support the included offense instruction. State v. Freiburg , 2018 MT 145, ¶ 13, 391 Mont. 502, 419 P.3d 1234. Regarding the second criterion, a lesser included offense instruction is not supported by the evidence if it "shows clearly that the defendant acted knowingly" or if "the defendant's evidence or theory, if believed, would require an acquittal." Shegrud , ¶ 13.
***124 ¶11 Jensen contends that, in light of the evidence presented, a rational jury could have been warranted in finding that he acted negligently, rather than knowingly, when he made the decision to drive at speeds of up to 75 miles per hour over the posted speed limit. Jensen maintains that because there was no proof that he knowingly failed to obey law enforcement signaling him to stop and because he was not driving erratically, the evidence did not clearly establish that he acted "knowingly." The State counters that the testimony describing Jensen's actions established that Jensen was aware of his actions and the risk they created and supported only a finding that he acted knowingly, not negligently.
¶12 In State v. Martinosky , 1999 MT 122, ¶ 8, 294 Mont. 426, 982 P.2d 440, after a high-speed pursuit in a residential area that ended in a truck crashing into a garage and house, Martinosky was charged with DUI and criminal endangerment. We held that the trial court did not err in refusing the defendant's *121 proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment. Martinosky , ¶ 22. This Court evaluated the evidence concerning Martinosky's mental state and recognized that in response to a patrol car's lights and sirens, Martinosky chose to run two stop signs and a traffic light while traveling at speeds of up to 65 miles per hour in a residential area, and he made the choice to continue to evade law enforcement. Martinosky , ¶ 21. We recognized that the evidence established that Martinosky was "fully aware of his actions and the probable outcome of those actions, thus acting knowingly." Martinosky , ¶ 22.
¶13 In State v. Russell , 2016 MT 268, ¶ 1, 385 Mont. 208, 383 P.3d 198, Russell was charged with criminal endangerment after engaging in a high-speed pursuit with law enforcement and driving erratically, badly damaging her car and causing oncoming traffic to swerve to avoid collision. Relying on Martinosky and the evidence demonstrating that Russell acted knowingly, we held that the district court did not abuse its discretion in finding the evidence insufficient to support an instruction on the lesser included offense of negligent endangerment. Russell , ¶ 25. Russell professed confusion over the reason she was stopped, asking numerous times why she was in trouble and telling officers she did not think she had been "running" from them. Russell , ¶ 9. The record nonetheless showed that Russell was aware that she was fleeing from the police because after an initial traffic stop, she swore at the officer, then sped away, refusing to stop again for multiple officers who had their emergency lights and sirens activated. Russell , ¶ 22. During the pursuit, Russell used her brakes and turn signal, ***125 illustrating her general awareness while driving. Russell , ¶ 23. We held that these facts taken together demonstrated Russell's knowledge that she was eluding police. Russell , ¶ 23. We observed that Russell's "extreme behavior"-driving at high speeds, forcing oncoming traffic to take evasive measures, and driving on a flat tire with an exposed rim-demonstrated knowledge that she engaged in conduct creating a substantial risk of death or serious bodily injury to another. Russell , ¶ 24.
¶14 We reached the opposite conclusion in Shegrud based on the evidence presented at trial. Law enforcement had received a report of a maroon truck driving erratically. Soon after, an officer located a red truck at a stop sign. As the officer followed it, he observed no erratic driving. Shegrud , ¶ 3. Shegrud stopped at a gas station, and officers made contact with him and saw a child in his vehicle. An officer noticed an odor of alcohol, leading him to believe Shegrud was impaired. Shegrud , ¶ 4. Shegrud admitted to consuming two beers and his prescribed Oxycodone. Shegrud , ¶ 5. Shegrud was charged with DUI and criminal endangerment. Shegrud , ¶ 5. We held that the District Court erred in declining Shegrud's proposed jury instruction of negligent endangerment. Shegrud , ¶ 19. Shegrud "did not flee law enforcement or even respond to questioning evasively." Shegrud , ¶ 14. There was no expert testimony that Shegrud was impaired, his BAC was under the legal limit, and officers observed no erratic driving. Shegrud , ¶ 16. Because the evidence was not conclusive that Shegrud acted knowingly, the facts were sufficient to support both criminal endangerment and negligent endangerment, and the district court should have instructed the jury on the lesser included offense. Shegrud , ¶ 17.
¶15 When the District Court refused Jensen's proposed negligent endangerment instruction, it reasoned:
Ok. I've had a chance actually to look over numerous cases on this. I'll note for the record Martinosky , Shegrud , and Russell , while I do not believe that this rises to the extent of Russell as you mentioned. What I do see and what I remember from the testimony is that there was driving that showed certain characteristics here. Driving in the passing lane to pass people. I think that showed what was going on at the time.
I do remember the testimony from both officers. Of Zufelt, while he didn't turn on his lights right away, he did testify that there was an increase of speed and pulling away as he crossed the median. Trooper Wyant testified, to my recollection, that as he ***126 saw the car coming, he got into the *122 median of the road driving directly at the lime green Charger [sic] that was in the passing lane and had his lights on and siren on. He then turned around, and the car did not not stop for three to four miles. I find from that driving action, I think that it is analogous in this case to a certain extent in Russell and I'm not going to give the lesser included.
¶16 We conclude that the District Court did not abuse its discretion. Jensen was not just speeding or engaging in risky behavior. The record shows that Jensen-traveling with a mixed drink in the console-drove at an alarmingly high rate of speed, passing multiple vehicles. Trooper Zufelt testified that when he crossed the median Jensen increased his speed and then pulled away as the trooper followed with his lights and sirens on. Trooper Wyant testified that he crossed the median and drove "directly" at Jensen with his lights and siren on. Hauer's fear when Jensen "scream[ed]" past him that he would cause a serious accident led him to seek law enforcement assistance. Whether Jensen lacked specific intent to injure anyone, he knowingly drove down a winding and mountainous highway at up to 50 to 75 miles per hour over the posted speed limit. His driving at speeds up to double the posted speed limit on that stretch of highway at a busy time created a substantial risk of death or serious bodily injury to others. Jensen told the troopers he liked to drive fast, but gave no indication that he had not noticed them in pursuit. The record supports the District Court's conclusion that Jensen acted knowingly by driving up to 150 miles per hour on a mountainous stretch of highway and overtaking multiple vehicles on the pass, with patrol cars following, their emergency lights and sirens activated. The District Court did not abuse its discretion in concluding that the evidence was insufficient to warrant a reasonable jury finding Jensen guilty of negligent endangerment. See Martinosky , ¶ 22 ; Russell , ¶ 24.
CONCLUSION
¶17 We affirm the District Court's refusal of Jensen's proposed jury instruction on negligent endangerment as a lesser included offense of criminal endangerment.
We Concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.