FILED

January 5 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0623

DA 13-0623

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 1

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

LAURENCE ALAN STEWART II,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and For the County of Cascade, Cause No. DC 12-472
                   Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Jennifer Hurley, Assistant Appellate Defender, Helena, Montana

       For Appellee:

           Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Assistant
           Attorney General, Helena, Montana

           John Parker, Cascade County Attorney, Great Falls, Montana

                            Submitted on Briefs:  December 2, 2015
                                     Decided:  January 5, 2016

Filed:

_____
                       Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Laurence Alan Stewart II appeals his conviction in the Eighth Judicial District Court, Cascade County, of seven counts of attempted deliberate homicide. Stewart raises the following issue on appeal:

> *Whether the District Court erred when it denied Stewart's request to instruct the jury on misdemeanor assault as a lesser-included offense of attempted deliberate homicide.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On the morning of November 1, 2012, Montana Highway Patrol Trooper Joe DeJong stopped Stewart for speeding on Highway 87 outside Stanford, Montana. Stewart handed his driver's license to Trooper DeJong, who took the license to his patrol car. Trooper DeJong learned from dispatch that Virginia law enforcement wanted to speak with Stewart in relation to an investigation in Virginia. In accordance with standard operating procedure, Trooper DeJong requested that another officer come to the scene before re-engaging Stewart. Before the back-up officer arrived, however, Stewart drove off in the direction of Great Falls.

¶4 Trooper DeJong activated his lights and siren and pursued Stewart along the highway. Several minutes into the pursuit, Stewart threw a homemade pipe bomb out of the driver's side window of his car. The bomb exploded approximately 100-150 yards ahead of Trooper DeJong's car. Trooper DeJong saw the explosion and heard pieces of debris hit his car. Concerned about additional bombs, Trooper DeJong slowed to keep 150-200 yards between his car and Stewart's and radioed for additional assistance.

2

¶5     After Stewart turned off Highway 87 onto a dirt road, Trooper Goodemoot joined in the pursuit. Stewart threw another pipe bomb out of his window. Upon seeing the smoke from the second pipe bomb, the troopers stopped 150-200 yards away and waited for the bomb to detonate. Trooper DeJong testified that he stayed a distance away from the bomb "because [he] did not want to die." When the bomb detonated, the troopers heard a "big boom" and could hear shrapnel "zing by [their] cars." Trooper DeJong testified that he could feel "the concussion" when the bomb went off. At this point, because they were "very concerned" about more pipe bombs, the troopers stayed even further back from Stewart's car—approximately three to four miles.

¶6     After some distance, Stewart turned back onto Highway 87 where another Highway Patrol Trooper had laid spike strips over the highway. Despite swerving to avoid the spikes, Stewart drove over them, puncturing his tires. Stewart continued to drive as multiple officers from the Highway Patrol, the Cascade County Sheriff's Department, and the Judith Basin County Sheriff's Department pursued him.

¶7     As the chase continued, Stewart threw several more pipe bombs out of his window. Responding officers had to swerve to avoid hitting the bombs. Some bombs, however, detonated very near several of their cars, throwing shrapnel along the side of the cars. One officer testified that his car shook when he drove by one of the explosions.

¶8     Eventually the tires on Stewart's car began to come off of their rims and he turned off of the highway. An officer rammed his patrol car into the back of Stewart's car, sending it into the ditch partially down a slope and into a fence. Stewart got out of the car with a handgun and ran. The officers chased Stewart, surrounded him, tased him, and

3

finally apprehended him. No one fired any shots. As he was being escorted to Trooper DeJong's patrol car, Stewart told the officers he did not mean to hurt anyone.

¶9 None of the officers were harmed during the pursuit and eventual apprehension of Stewart. During the "render safe" process that followed, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Agent Brad Engelbert discovered a total of nine additional pipe bombs—seven in Stewart's car and two along the roadway—that were undetonated. The bombs were constructed from galvanized metal pipe, end caps, cannon fuse, and plastic tape, and were filled with hex nuts, dry-wall screws, and ball bearings.

¶10 On November 16, 2012, the State charged Stewart by Information with seven counts of Attempted Deliberate Homicide, in violation of §§ 45-4-103 and 45-5-102, MCA. The court held a jury trial from April 29 through May 6, 2013. The jury heard testimony from the officers involved in the pursuit and saw video footage from dashboard cameras of their vehicles. The video footage captured several of the explosions. During closing argument, the State played a portion of a video obtained by federal law enforcement agencies in which Stewart previously had made threatening statements that if law enforcement came for him, "people will die."

¶11 During the settling of jury instructions, Stewart asked the District Court to instruct the jury on various lesser-included offenses, including misdemeanor assault. After hearing argument from both counsel, the court concluded that, as a matter of law, misdemeanor assault is a lesser-included offense of deliberate homicide. The court also concluded, however, that the evidence at trial did not support a misdemeanor assault instruction, "however formulated." The court instead decided to give an instruction on

4

the lesser-included offense of attempted aggravated assault. Stewart asked the jury to acquit him on Counts I-IV, and to convict him on the lesser-included offense of attempted aggravated assault on Counts V-VII.

¶12 The jury found Stewart guilty on all seven counts of attempted deliberate homicide. The District Court sentenced Stewart to serve a life term in prison on each count and declared him ineligible for parole. Stewart appeals.

## STANDARD OF REVIEW

¶13 We review for abuse of discretion a district court's refusal to give an instruction on a lesser-included offense. *State v. Johnson*, 2008 MT 227, ¶ 12, 344 Mont. 313, 187 P.3d 662. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *State v. McLaughlin*, 2009 MT 211, ¶ 9, 351 Mont. 282, 210 P.3d 694. A district court has broad discretion when it instructs the jury; we review jury instructions in criminal cases to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *McLaughlin*, ¶ 10.

## DISCUSSION

¶14 *Whether the District Court erred when it denied Stewart's request to instruct the jury on misdemeanor assault as a lesser-included offense of attempted deliberate homicide.*

¶15 A defendant is entitled to a lesser-included offense instruction if: 1) the offense constitutes an included offense as defined by § 46-1-202(9), MCA, and 2) there is sufficient evidence to support an instruction on the lesser-included offense. *State v. Cameron*, 2005 MT 32, ¶ 20, 326 Mont. 51, 106 P.3d 1189. In other words, the court

5

must give a lesser-included offense instruction if the party properly requests it and if "the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense." Section 46-16-607(2), MCA.

¶16 A person commits misdemeanor assault when he purposely or knowingly causes bodily injury to another or the reasonable apprehension of bodily injury in another. Section 45-5-201, MCA. "Bodily injury means physical pain, illness, or an impairment of physical condition and includes mental illness or impairment." Section 45-2-101(5), MCA. A person commits aggravated assault when he "purposely or knowingly causes serious bodily injury to another or purposely or knowingly, with the use of physical force or contact, causes reasonable apprehension of serious bodily injury or death in another." Section 45-5-202, MCA. Serious bodily injury means bodily injury that:

(i) creates a substantial risk of death;
(ii) causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or
(iii) at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ.
(b) The term includes serious mental illness or impairment.

Section 45-2-101(66), MCA. "A person commits the offense of attempt, when with the purpose to commit a specific offense, the person does any act toward the commission of the offense." Section 45-4-103(1), MCA.

¶17 "A defendant may be convicted only of the 'greatest included offense about which there is no reasonable doubt.'" *State v. Castle*, 285 Mont. 363, 367, 948 P.2d 688, 690 (1997) (quoting § 46-16-606, MCA). We have held, and the State does not dispute, that misdemeanor assault is a lesser-included offense of deliberate homicide. *Castle*, 285

6

Mont. at 368-69, 948 P.2d at 691. In *State v. Feltz*, 2010 MT 48, 355 Mont. 308, 227 P.3d 1035, and in *State v. Reiner*, 179 Mont. 239, 587 P.2d 950 (1978), we considered the issue of misdemeanor assault as a lesser-included offense of aggravated or felony assault. In both cases we recognized that whether bodily injury is serious, within the meaning of the law, is a question for the jury to determine. *Feltz*, ¶ 25; *Reiner*, 179 Mont. at 252, 587 P.2d at 958. The trial court need not instruct the jury on misdemeanor assault, however, if the evidence shows that the only type of injury that would be feared is serious bodily injury. *Reiner*, 179 Mont. at 253, 587 P.2d at 958.

¶18 Stewart argued at trial that there was sufficient evidence for a misdemeanor assault instruction and that the jury reasonably could conclude that there was a risk of only bodily injury, as opposed to serious bodily injury. Stewart noted that the State "never put on any expert that talked about the strength of the explosive potential of the bombs that were recovered from Mr. Stewart's car, or the two that were found that never exploded." The court denied Stewart's request on the ground that the evidence "doesn't support the concept of intent to either cause mere bodily injury or to cause reasonable apprehension of mere bodily injury."

¶19 Stewart's counsel requested at a minimum that the court instruct the jury on misdemeanor assault as a lesser-included offense on Counts I and II—the bombs that exploded in front of Trooper DeJong and Trooper Goodemoot. The court denied the request on grounds that the "manifest dangerous nature" of pipe bombs, together with the officers' proximity to the bombs as they pursued Stewart, did not support a reasonable conclusion that there was an intent simply to "either scare [the troopers] by reference to

7

mere bodily injury or to attempt mere bodily injury as distinct from the risk or actuality of serious bodily injury." The District Court instead instructed on the lesser-included offense of attempted aggravated assault with respect to all charges.

¶20 On appeal, Stewart argues that evidence supported his defense that he "was trying only to scare the officers away during the pursuit or cause at most bodily injury—not serious bodily injury or death." The question whether he intended or attempted to cause serious bodily injury or lesser bodily injury, Stewart claims, was one of fact for the jury. Stewart argues that the court's refusal based on the "manifest dangerous nature of pipe bombs" was improper because it "took that question of fact out of the jury's hands." Stewart asserts that the detonations shown in the pictures and videos "were not massive explosions," and that there was "no expert testimony to inform the jury about the capacity of these pipe bombs, their force, or their actual dangerousness." Stewart underscores that the bombs caused no injuries and that he "repeatedly stated he had not intended to hurt anyone." Therefore, Stewart contends that the District Court erred when it "usurped the jury's role in making that determination."

¶21 Stewart relies on *Feltz* to support his assertions. In *Feltz*, the defendant was charged with felony assault with a weapon for wielding a knife at his neighbors while swearing and calling them names. *Feltz*, ¶¶ 5, 11. The district court denied the defendant's request for a lesser-included offense instruction on misdemeanor assault. *Feltz*, ¶ 12. We held that the district court erred in refusing the instruction because there was evidence to support a fear of bodily injury. We reasoned that "the size and type of knife used, the way [the defendant] held it, whether he displayed it prominently, and what

8

[the defendant] said while doing so were in dispute." *Feltz*, ¶ 28. Moreover, the victim did not testify that she feared for her life. *Feltz*, ¶ 28.

¶22 In *Reiner*, the defendant was armed with a .357 Magnum revolver and threatened to shoot and kill suspected trespassers on the property he was caretaking. *Reiner*, 179 Mont. at 242-43, 578 P.2d at 952-53. The defendant fired two shots on the ground near where the suspected trespassers were standing. The State charged him with three counts of aggravated assault. *Reiner*, 179 Mont. at 243, 587 P.2d at 953. The district court denied the defendant's request for a lesser-included offense instruction on misdemeanor assault. *Reiner*, 179 Mont. at 251, 587 P.2d at 957. We upheld the court's refusal of the instruction because the evidence did not support that the victims were at risk of bodily injury; rather, it was "clear that defendant put his victims in reasonable apprehension of serious bodily injury by his menacing use of a .357 Magnum revolver." *Reiner*, 179 Mont. at 253, 587 P.2d at 958. We distinguished *Feltz* because the jury would not have been warranted in finding that the defendant's actions could have caused reasonable apprehension of only bodily harm. *Reiner*, 179 Mont. at 253, 587 P.2d at 958.

¶23 As in *Reiner*, we conclude that the District Court did not abuse its discretion because the evidence did not warrant a conviction of any offense lesser than the two offenses on which the trial court gave instructions. Stewart lit the fuses on seven pipe bombs and tossed them into the paths of oncoming law enforcement vehicles. The pipe bombs were filled with materials that easily would cause serious bodily injury if a bomb had detonated in contact with a vehicle. Stewart's argument that the State should have provided expert testimony about the "actual dangerousness" of pipe bombs is

9

unpersuasive. Videos show the bombs exploding with considerable force. The videos and witness testimony demonstrate that upon explosion, shrapnel from the bombs flew substantial distances from the detonation site. Multiple law enforcement officers testified that they feared for their lives. Stewart previously had recorded a video in which he made threats to kill law enforcement officers. Although Stewart claims that he did not intend to hurt anyone, the jury would not have been warranted in finding that Stewart purposely or knowingly caused only reasonable apprehension of bodily injury, as opposed to reasonable apprehension of or attempt to cause serious bodily injury or death.

¶24 The trial court did not act arbitrarily, without conscientious exercise of judgment, or exceed the bounds of reason when it determined that the "manifest dangerous nature of pipe bombs" and the officers' proximity to the bombs supported the jury's consideration of only the offenses of attempted deliberate homicide or attempted aggravated assault.

¶25 We conclude further that the District Court's refusal to instruct the jury on misdemeanor assault did not prejudice Stewart's substantial rights. Despite an instruction on the lesser-included offense of attempted aggravated assault, the jury rejected that lesser charge in favor of attempted deliberate homicide on all seven counts. Given this rejection, Stewart's case does not present "the situation where the jury, convinced that the defendant is guilty of some crime, although not necessarily the crime charged, convicts the defendant rather than let his action go unpunished simply because the only alternative was acquittal." *Castle*, 285 Mont. at 367, 948 P.2d at 690 (citing *State v. Gopher*, 194 Mont. 227, 231, 633 P.2d 1195, 1197-98 (1981)).

## CONCLUSION

¶26     The District Court did not abuse its discretion in denying Stewart's request to instruct the jury on misdemeanor assault as a lesser-included offense of deliberate homicide.  Accordingly, the Judgment is affirmed.


                                        /S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA